156 So.2d 38 (1963)
Margaret ENFINGER, Appellant,
v.
The ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, a foreign corporation, Appellee.
No. D-453.
District Court of Appeal of Florida. First District.
September 12, 1963.
*39 Earl R. Duncan, Panama City, for appellant.
Isler, Welch & Jones, Panama City, for appellee.
HOBSON, Associate Judge.
Appellant, Margaret Enfinger, brought her action to recover the principal amount of an insurance policy issued by the appellee upon the life of her deceased husband. The cause was submitted to the trial court upon an agreed statement of facts which reveals the following salient points.
Decedent, James W. Enfinger, first applied for membership in The Order of United Commercial Travelers of America on February 24, 1954. He was accepted as a member on March 17, 1954, and certificate of insurance #548851 was issued insuring him against accidental injury and death. When Mr. Enfinger failed to pay his quarterly dues and assessments for the period commencing September 1, 1960, he was automatically suspended from the benefits of his lodge and his certificate of insurance on October 1, 1960, pursuant to Article XI, § 8 of the Order's Constitution. The aforesaid section provides for automatic suspension when Mr. Enfinger failed "to restore himself and his certificate to good standing within 30 days from the date of such delinquency." On January 26, 1961, more than 90 days after his suspension, Mr. Enfinger applied for reinstatement. He was required to complete a form reinstatement application. This form contained the following printed disclaimer:
"* * * and that the Order shall not be liable for any accidental injury or death happening prior to the issuance of *40 a Certificate or Certificates of Insurance by said Order."
Mr. Enfinger's application was received by the local council on January 26, 1961, together with his fee in the amount of $9.20. Said $9.20 consisted of $2.50 local council dues, $2.70 insurance assessment for February and March, 1961, and $4.00 insurance assessment for April, May and June, 1961. Pursuant to a favorable committee report, Mr. Enfinger was elected to membership in the local council on January 31, 1961. The pertinent provision of the Order's constitution which provides for reinstatement of cases such as Mr. Enfinger is as follows:
"Each application shall be referred to a [local] Committee of three for investigation, upon whose report a ball ballot shall then be taken upon each application, and if not more than two adverse ballots appear, the Senior Counselor [also local] shall declare the applicant reinstated to membership, subject to the approval of the Supreme Office." Art. XI, § 9. (Italics supplied.)
The Supreme Office is located in Columbus, Ohio.
The local chapter performed as required by the above constitutional provision and forwarded Mr. Enfinger's application for reinstatement to the Supreme Office for its approval on January 31, 1961. On February 3, 1961, the Supreme Office received and acknowledged receipt of the insurance funds paid in behalf of Mr. Enfinger. Mr. Enfinger came to his death by accidental drowning on February 4, 1961, before the Supreme Office had actually approved his application. Without knowledge of his death, on February 8, 1961, his application was unqualifiedly approved by the Supreme Office and his insurance certificate was issued bearing the number 548851, as had his original insurance certificate. The insurance certificate was not delivered and on demand the company refused to honor the same on the ground that Mr. Enfinger had died before the approval of his reinstatement application. In denying Mrs. Enfinger's claim, the company relies upon the portion of the Order's constitution which provides, "The right of any such applicant or his beneficiary to fraternal privileges of the Order or indemnity under the provisions of Article XI, shall not accrue until twelve o'clock noon, Eastern Standard Time, of the day upon which his certificate of reinsurance is dated." Article II, Section 9.
Subsequent to Mr. Enfinger's death, on February 17, 1961 the Supreme Office forwarded the insurance assessment for April, May and June, 1961, in the amount of $4.00 to the local council for return to decedent's estate; however, it was not until more than 14 days after the complaint was filed that the insurance assessment for February and March, 1961, and local dues were tendered to the appellant.
The trial court upon consideration of the agreed statement of facts and argument of the parties in interest entered a judgment in favor of the appellee denying appellant's recovery under the policy of insurance.
We have carefully examined the agreed statement of facts, as well as the briefs of the parties herein. From our scrutiny of the path followed by Mr. Enfinger's application for reinstatement, it is clear that the bulk of the requisite steps leading to reinstatement had been completed on or before his accidental death on February 4, 1961. The record reflects that on or before February 3, 1961, Mr. Enfinger's application for reinstatement, appropriately endorsed by two members in good standing, had been duly submitted to the local council of the Order; it had been approved by a three-member membership committee; he had been reelected to membership in the Order; the local council had issued to Mr. Enfinger a membership card showing him to be "a member in good standing"; his approved application form, together with the insurance assessments for February through June had been forwarded to the national office of the Order and the national office of the Order had acknowledged receipt of Mr. Enfinger's *41 assessments along with the other reports and funds submitted by the local council. Nothing was left for Mr. Enfinger to do. He had met all requirements. The only thing remaining undone prior to Mr. Enfinger's death was the perfunctory task on the part of the Supreme Council of physically issuing and delivering the insurance policy in question. Lest this statement be mistakenly considered unwarranted, it must again be pointed out that between Mr. Enfinger's death on February 4th and receipt of notice thereof by the Order's home office decedent's policy of insurance actually was issued in the routine course of business on February 8, 1961. Moreover, it is quite clear that Mr. Enfinger was not guilty of any fraud or misrepresentation; otherwise the Supreme Office would not have approved the application. No basis for disapproval of said application has even been suggested.
The agreed statement of facts discloses that appellant's decedent submitted two insurance assessment payments to the Order's home office. The first assessment of $2.70 was intended to provide insurance coverage for the months of February and March, 1961, and the second assessment was advance payment to cover the months of April, May and June, 1961. The inescapable conclusion from the division of the assessment costs is that both parties intended that the entire month of February would be covered by the premium of $2.70.
Under the appellee's customary mode of procedure, which is prescribed by its constitution, all the money which had been collected by the Secretary-Treasurer of each local chapter is remitted to the Supreme Office of the Order once a month on the first day of each month. (Art. XI, Section 10) If the appellee's contention of no coverage until the policy is actually issued is followed and applied to all cases of reinstatement, the applicants are deprived of any benefit for the premiums paid for a portion of the month of their reinstatement and the appellee is being paid for a risk that it did not incur. This is true because the appellee does not consider itself bound on the policy until noon of the date of issuance which is always subsequent to the first day of the month, yet nevertheless collects premiums covering each and every day of that month. This being so, the appellee cannot at this late date assert that the policy did not become effective until February 8, or defend on the ground of forfeiture. As the Supreme Court of Pennsylvania pointed out in the case of MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213, 155 A. 491, 77 A.L.R. 353,
"In the absence of an express agreement to the contrary, premiums will be so applied as to give the insured the protection for which he pays. `A construction which gives insured insurance for a less period of time than that covered by the premium which he has paid should not be adopted.' 32 C.J. 1165."
Our decision that appellant as the beneficiary is entitled to recover the principal amount of the policy is further buttressed by more than one salient fact disclosed by the agreed statement of facts.
It should be noted that the appellee's conduct after it had full knowledge of Mr. Enfinger's death supports appellant's recovery. The agreed statement of facts reflects that after receiving notice of Enfinger's death, the appellee transmitted (on February 17, 1961) to the secretary of the local order its check for $4.00 for delivery to the estate of the decedent. Said $4.00 represented a return of decedent's insurance assessments covering the months of April, May and June, 1961. It was not until 14 days after the appellant filed her suit as beneficiary that on June 27, 1961, the appellee transmitted to its local secretary a check for $2.70, which represented insurance premiums for the months of February and March, 1961.
The appellee's receipt and retention of decedent's assessments covering the entire month of February, for such a long time after Enfinger's death with full knowledge of said death constitutes a waiver precluding *42 its present denial of liability upon the basis of a forfeiture. The fact that equity abhors forfeitures is apodictic. But let it not be forgotten that the law does not favor them. Nash Miami Motors, Inc. v. Bandel, Fla., 47 So.2d 701; Supreme Lodge K P v. Wellenvoss, 119 F. 671, 56 C.C.A. 287.
If we were compelled to turn our decision upon the restrictive language of the contract between Mr. Enfinger and the Order, which contract is comprised of the provisions of the Order's Constitution and the specific proviso contained in the application form hereinbefore set forth, we would probably be required to uphold appellee's contention that the Order cannot be held liable because Mr. Enfinger's death occurred prior to the "perfunctory" approval by the Supreme Office. However, the agreed statement of facts precludes us from writing finis at this juncture. We find present in this case all the requisites for invocation of the principle of estoppel by waiver or perhaps more accurately stated estoppel resulting from a waiver.
Waiver of a forfeiture may be asserted and relied upon in law as well as in equity.[1] It simply means that when one has waived a forfeiture he is estopped from further reliance upon it.
We recognize the fact that the doctrines of waiver and estoppel are not synonymous.[2] However, they are frequently closely related.
Estoppel may be established in many ways. There are various types of estoppel among them being equitable estoppel, estoppel by deed, by matter of record, by matter in pais and estoppel by conduct. On the other hand, waiver, although it is not technically speaking an estoppel may be effected by various acts and different courses of conduct which operate in the final analysis as an estoppel or at least a quasi-estoppel.
We believe the correct and proper view of estoppel may be stated in the following words: "Certain admissions are indisputable, and estoppel is the agency of the law by which evidence to controvert their truth is excluded."[3] "Waiver is the intentional relinquishment of a known right * * *."[4]
Waiver operates to "estop" one from asserting that which he might otherwise have relied upon but it is not a true estoppel. "That kind of waiver which consists merely in renouncing some right, or in ratifying what one might repudiate, is, certainly, no estoppel, though it has been called such. * * *"[5] Call it what you may, the conduct of the appellee herein, which we have pin-pointed, "bars," "estops," or if you please "precludes" it from relying upon the asseverated forfeiture. The U.S. Supreme Court has accurately defined the waiver or quasi-estoppel which we find exists under the facts of the instant suit:
"Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."[6] (Italics supplied.)
It must be borne in mind that this was not an original application for membership in *43 the Order or for an initial certificate of insurance, but was an application for reinstatement to a status previously occupied and to an indemnity formerly existent. The insurance certificate actually dated and issued on February 8, 1961, bore the identical number (548851) which appears on Mr. Enfinger's original certificate. We cannot consider appellee's defense anything more nor less than reliance upon a forfeiture.
The Order had knowledge of the facts constituting the forfeiture. The forfeiture was complete and absolute. In effect, the Order said to Mr. Enfinger: We will waive the forfeiture and reinstate your membership and your insurance policy upon certain conditions. Mr. Enfinger fulfilled all of the conditions required of him. As aforestated, the only act left to be done was for the Order to deliver the executed, approved and dated certificate. This it failed and refused to do upon learning of Mr. Enfinger's death. As has been noted complete performance by both parties of a specific agreement to waive a forfeiture is not always necessary. Moreover a court may declare a waiver of a forfeiture if, first, the insurer has knowledge of the facts constituting the forfeiture; second, the forfeiture is complete and absolute; third, the insurer takes some course which amounts to an unequivocal act recognizing the continuance of the policy or which is wholly inconsistent with the forfeiture.
It is crystal clear that the forfeiture created by Mr. Enfinger's failure to pay dues and assessments was complete and absolute. It is likewise certain that the Order had knowledge of the facts constituting the forfeiture. This brings us to a discussion of the unequivocal acts on the part of the Order which we have concluded recognize the continuance of the policy and which are wholly inconsistent with the forfeiture.
One of these acts took place at the 56th Annual Convention of the Georgia-Florida Chapter of the Order which was held at Miami, Florida, on May 11th-12th and 13th, 1961. The council at this late date delivered to its members a brochure containing, among other things, a memorial roster of deceased members for the period April 1st, 1960, to March 31st, 1961, which roster carried the name of the decedent on page 50 thereof as a deceased member. Surely he would not have been so listed had the Order in May, 1961, considered his membership forfeited. Appellee might at this point attempt to make a play on words and say there is a difference between reinstatement to membership and reinstatement of the insurance policy. The fact remains, however, that the requirements for reinstatement to membership are identical to those which are necessary for reinstatement of the insurance policy. They go hand in hand. It is flagrantly inconsistent to say that the approval of the Supreme Council executed and dated February 8, 1961, four days after Enfinger's death, had the effect, which the Order recognized of reinstating Mr. Enfinger to membership but it was ineffective as an approval of the reinstatement of his insurance policy.[7]
The second and primary unequivocal act on the part of the Order which we hold to be a recognition of the continuance of the policy and which is wholly inconsistent with the forfeiture is the receipt and retention by the appellee of decedent's assessment covering the entire month of February, 1961, for a long time after Enfinger's death and until June 27th, 1961, fourteen days after the appellant filed this suit. The assessments for February and March, 1961, were unduly and unwarrantably retained by the Supreme Office of the appellee. It is, we believe, obvious that had there been no suit there would have been no return of the money paid by Mr. Enfinger for the February and March assessments. As was stated uniquely, if not mordaciously, by the Supreme Court of Texas, "One who places his bets after the dice are thrown is sure to win."[8]
*44 For the sake of emphasis we repeat the fact that the Order led Mr. Enfinger "honestly to believe" that if he would perform certain acts "forfeiture of his policy [would] not be incurred." He fully complied with the outlined requirements. Thereafter without intervening just cause the Order failed and refused to fulfill its obligation. We cannot believe that any court created for the purpose of administering justice would condone such conduct much less permit an insurance company to retain for an unwarranted and unreasonable length of time the premium paid; thus avail itself of the benefits of the contract and at the same time escape the liability imposed thereby. Such conduct not only demands the application of the doctrine of waiver but it is unconscionable as well an antithetical to the public policy of this Sovereign State. We are aligned with those of our sister states which hold that as a matter of simple unadorned justice in a case such as this, every doubt should be resolved in favor of the insured.
Our feeling with reference to the contention of the appellee herein can best be epitomized by a quotation from the gifted and ofttimes trenchant pen of Mr. Justice Terrell:
"To permit such a contention to prevail would be to chloroform the element of right and justice on which all such controversies rest and glorify any technical defense offered to defeat it."[9]
Fiat justicia, rurat coelum.
For the reasons above stated, the judgment of the circuit court is reversed with directions that the trial court enter an appropriate judgment in favor of the appellant herein, including a reasonable attorney's fee for her counsel.
STURGIS, C.J., and RAWLS, J., concur.
NOTES
[1] See Rule 1.8(d), Florida Rules of Civil Procedure, 30 F.S.A.
[2] Thomas N. Carlton Estate, Inc. v. Keller, Fla., 52 So.2d 131, 132, 133.
[3] Bigelow on Estoppel.
[4] Rader v. Prather, 100 Fla. 591, 130 So. 15.
[5] Bigelow on Estoppel, Sixth Edition, Chap. XIX, p. 717, Footnote # 2.
[6] Insurance Co. v. Eggleston, 96 U.S. 572, 577, 24 L.Ed. 841. See also Phoenix Mut. Insurance Company v. Doster, 106 U.S. 30, 35, 1 S.Ct. 18, 27 L.Ed. 65.
[7] Cf. Order's Constitution, Art. XI, Section 9.
[8] Bailey v. Sovereign Camp W.O.W., 116 Tex. 160, 286 S.W. 456, 47 A.L.R. 876.
[9] Lightsey v. Lightsey, 150 Fla. 664, 8 So.2d 399, 400.