Curtis KAMINER et al., Plaintiffs-Appellants,

v.

The FRANKLIN LIFE INSURANCE COMPANY, Defendant-Appellee.

No. 72–1517.

United States Court of Appeals, Fifth Circuit.

Feb. 12, 1973.

James P. O'Flarity, Fort Lauderdale, Fla., for plaintiffs-appellants.

Reginald L. Williams, Miami, Fla., for defendant-appellee.

Before RIVES, THORNBERRY and GOLDBERG, Circuit Judges.

RIVES, Circuit Judge:

The Kaminer children, plaintiffs, sued the defendant, Franklin Life Insurance Company, claiming that it had issued to

their mother, Sondra Kaminer, a life insurance policy in the face amount of $50,000.00 and that they were the named beneficiaries. The answer of the defendant insurance company asserted two defenses: (1) that the policy of insurance was not issued and delivered during the lifetime of Sondra Kaminer, and that the amount of defendant's liability was limited to $841.00, the premium which had been paid; and (2) that, assuming the existence of a valid policy of insurance, the insured committed suicide within two years from the date of issue of the policy. The district court granted the defendant's motion for summary judgment, holding that no valid insurance policy ever existed.[1]

On appeal, the plaintiffs make four contentions: (1) The life insurance policy was, by its terms, effective to provide coverage for Sondra Kaminer's death; (2) by delivery of the policy, after it knew or was charged with knowledge of the prior death of Sondra Kaminer, the defendant waived any defense based on the date of delivery; (3) by denying coverage solely on the ground of suicide, the defendant waived all other defenses; (4) by accepting the premium after it knew of the death of Sondra Kaminer and retaining the premium until claim was made, the defendant is estopped to deny coverage.

A detailed statement of the relevant facts is essential to a consideration of the issues. The defendant's motion for summary judgment was based

"on the ground that the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law on the issue that no valid contract of insurance ever became effective in that no policy

was issued or delivered during the lifetime and continued insurability of the proposed insured."

[Rec. 71.]

On pre-trial the parties stipulated to most of the pertinent facts as follows:

"As part of the Profit Sharing Plan and Trust Agreement (retirement plan) of Shift Shack, Inc., an application for life insurance on the life of Sondra Kaminer was submitted to The Franklin Life Insurance Company. The application was executed by the insured on July 23, 1970 and medical examination was completed and executed August 7, 1970. The sale of the life insurance policy on the life of Sondra Kaminer as well as all other policies written under the Profit Sharing Plan of Shift Shack, Inc. was handled by Eugene E. Holbrook, a duly authorized agent of The Franklin Life Insurance Company. On October 3, 1970, Sondra Kaminer met her death by carbon monoxide poisoning. On that date, the agent of The Franklin Life Insurance Company, Eugene E. Holbrook, was advised of her death. On September 22, 1970 a check payable to The Franklin Life Insurance Company was made out in the home office of Shift Shack, Inc. to cover the premiums for the first year's coverage of the policy on the life of Sondra Kaminer and the other policies under the Profit Sharing Plan and said check was delivered to Eugene E. Holbrook but this check was not signed by any trustee of the Shift Shack, Inc. Profit Sharing Trust. On or about October 7, 1970, Eugene E. Holbrook, with full knowledge that Sondra Kaminer was deceased, secured the signature of Gerald Kaminer, as trustee, on the check covering the premiums on all the policies applied for under the plan, and forwarded the check to the home

1. In his memorandum opinion, Judge Eaton took the broad position that, "In short, forgetting the doctrines of agency, waiver and estoppel, there is no such thing as a

contract entered into for the purpose of insuring the life of a deceased person."
[Rec. 161.]

office of The Franklin Life Insurance Company. The said check included the sum of $841.00 intended as a premium on the policy on the life of Sondra Kaminer. On or after October 7, 1970, with full knowledge of the death of Sondra Kaminer, Eugene E. Holbrook delivered to Gerald Kaminer policy No. 3090743 insuring the life of Sondra Kaminer. Home office records of the insurance company show that the policy was issued October 7, 1970 and mailed October 8, 1970. The first policy year under the policy was designated to begin June 30, 1970, which the agent of the defendant, Eugene E. Holbrook, testified was the effective date of the policy, which was the date the premium became due. On or about January 4, 1971, a claim for payment under policy No. 3090743 for the death of Sondra Kaminer was submitted to the defendant by the attorney for the beneficiaries, Curtis, Brian and Mona Kaminer. On or about January 19, 1971, the claim of the beneficiaries of the policy was denied by the defendant, the sole reason for denial of the claim being an allegation that Mrs. Kaminer's death was the result of suicide.

The letter denying coverage transmitted a check in the amount of $841.00 being an alleged refund of the annual premium. On or about January 27, 1971, the check in the amount of $841.00 was refused by the plaintiffs and returned to the defendant."

[Rec. 99–100.]

The producing agent, Eugene E. Holbrook, testified by deposition that he received the policy sued on, along with nine other policies issued as part of the profit sharing plan and trust agreement of Shift Shack, Inc.,[2] sometime after it

was mailed by the defendant and after Sondra Kaminer was already deceased. Thereafter, Holbrook delivered all ten policies to Gerald Kaminer, the ex-husband of Sondra Kaminer.[3] Gerald Kaminer was then the surving principal stockholder and an officer of Shift Shack, Inc., and also the surviving trustee of the profit sharing plan and trust agreement, designated as "owner" of the policy (supra n. 2). No premium was collected on the policy, nor on any of the policies in the group, until Monday, October 5, 1970, after the death of Sondra Kaminer on October 3, 1970.

The application for the insurance, attached to and made part of the policy, was signed by Sondra Kaminer as "Proposed Insured" and by Gerald Kaminer as "Trustee" and contained the following provision:

"IT IS AGREED that: * * * (3) no insurance shall be considered in effect under this application, except as may be provided in a Conditional Premium Receipt bearing the same date as this application, unless and until the application is approved and accepted by the Company at its Home Office and the policy manually delivered to and accepted by the Proposed Insured or by the Owner if other than the Proposed Insured during the lifetime and continued insurability of the Proposed Insured and the first premium thereon has been paid in full * * *."

[Rec. 19.]

We proceed to discuss the plaintiffs' four contentions.

■ 1. Was the policy effective by its terms to provide coverage for Sondra Kaminer's death?

This contention is based on the fact that the first policy year under the poli-

---

2. According to the application, attached and made part of the policy, Shift Shack, Inc. was engaged in dress manufacturing. The application further named as "owner" of the policy "Shift Shack, Inc. Profit Sharing Trust Fund."

3. According to Holbrook's deposition, "They were either divorced or in the process of being divorced." [Rec. 120.]

cy was designated to begin June 30, 1970, and that the producing agent, Eugene E. Holbrook, testified on deposition that this was the effective date of the policy.[4] We find no inconsistency in the references to June 30, 1970, and the clear and explicit agreement in the application for the policy, attached and made part of the policy, that no insurance shall be considered in effect unless and until the policy is "manually delivered to and accepted by the Proposed Insured or by the Owner if other than the Proposed Insured during the lifetime and continued insurability of the Proposed Insured." That unambiguous agreement makes it clear that Holbrook's delivery of the policy to the "Owner" after Sondra Kaminer's death did not result retroactively in putting into effect the life insurance from any date prior to her death.

■ 2. By delivering the policy to the "Owner" after the death of the "Proposed Insured," did the defendant waive any defense based on the date of delivery?

As has just been observed, the agreement was clear and explicit that no insurance shall be considered in effect by

delivery to the "Owner" unless made "during the lifetime and continued insurability of the Proposed Insured." On this issue the Erie doctrine requires us to follow the law as declared by the Supreme Court of Florida in Gulf Life Ins. Co. v. Ellis, 1940, 145 Fla. 262, 198 So. 836, 837:

"The terms of the contract were plain and unambiguous and since the insured was not alive and in good health on the effective date of the policy as its terms require, we have reached the conclusion that it never took effect and recovery cannot be had thereunder. It is certainly not an unreasonable requirement that the insured be alive and in good health on the date of the delivery of the policy."

3. By denying coverage solely on the ground of suicide, did the defendant waive all other defenses?

4. By accepting the premium after it knew of the death of Sondra Kaminer, and retaining the premium until claim was made, is the defendant estopped to deny coverage?

■ Courts are extremely liberal in their application of the doctrines of waiver and estoppel to obviate the for-

4. The defendant undertook to explain:
"INTERROGATORY NO. 7
"Please state the period of time with inclusive dates for which the premium of $841.00 recited in your answer constitutes consideration for coverage.
"ANSWER TO INTERROGATORY NO. 7
"The premium was to cover the fiscal year beginning June 30, 1970 and ending June 29, 1971. Although the pension plan was to be put into effect some time later, all policies were to be dated back to June 30, 1970. The reason for this was that the policies were designed to provide retirement benefits as well as the incidental death benefit coverage and the payment of the premium for the months in which there was no death benefit coverage in effect was designed to give the policies the earlier date so as to provide increased cash values on the anniversary date of each policy."

[Rec. 58.] Further, Holbrook's deposition, read in context, did not support the interpretation that the policy retroactively provided life insurance coverage for Sondra Kaminer from this so-called "effective date." We quote from the deposition:
"* * * The effective date of a policy is the date that the premium becomes due on a policy and this can be any time. We can request an effective date on any policy.
"In this particular case we requested an effective date on all policies of June 30th to coincide with the fiscal year of the corporation and the fiscal year of the trust.
"The date of issue is the date that the policy is physically issued in the home office; in other words, it is written up and sent to us."
[Rec. 136–137.]

feiture of a contract of insurance.[5] It is equally well settled, however, that those doctrines cannot be used to extend the coverage of an insurance policy or to create a primary liability.[6]

The plaintiffs mistakenly rely upon Enfinger v. Order of United Commercial Travelers, D.C.App.Fla., 1st Dist., 1963, 156 So.2d 38, as holding to the contrary. There, the insured was "automatically suspended from the benefits of his lodge" (156 So.2d at 39). The court spoke of waiver of a "forfeiture" or being estopped from relying on a "forfeiture" (156 So.2d at 42). Indeed the court made the distinction explicit:

> "It must be borne in mind that this was not an original application for membership in the Order or for an initial certificate of insurance, but was an application for reinstatement to a status previously occupied and to an indemnity formerly existent. The insurance certificate actually dated and issued on February 8, 1961, bore the identical number (548851) which appears on Mr. Enfinger's original certificate. We cannot consider appellee's defense anything more nor less than reliance upon a forfeiture."

156 So.2d at 42–43.

To hold the defendant estopped to assert that it did not contract to insure the life of a deceased person would be a perversion of an equitable doctrine. In this case it would be equivalent to preventing the defendant from resisting enforcement of a claimed contract for it to exchange $50,000.00 for $841.00. Clearly, the scales of justice are heavily weighted in favor of the defendant insurance company. The judgment is

Affirmed.

---

5. Many cases are collected in 16A Appleman, Insurance Law and Practice §§ 9081, 9082.

6. Reliance Insurance Co. v. The Escapade, 5 Cir. 1960, 280 F.2d 482, 487; Ammons v. Franklin Life Ins. Co., 5 Cir. 1965, 348 F.2d 414, 417; Northwestern National Casualty Co. v. McNulty, 5 Cir. 1962, 307 F.2d 432, 443; cases collected in 16A Appleman, Insurance Law and Practice § 9090.