338 So.2d 1078 (1976)
MONTGOMERY ENTERPRISES, INC., et al., Appellants,
v.
The ATLANTIC NATIONAL BANK OF JACKSONVILLE, a Corporation, Appellee.
No. Y-499.
District Court of Appeal of Florida, First District.
September 3, 1976.
Rehearing Denied November 22, 1976.
*1079 Stephen D. Rees of Icard, Merrill, Gullis, Timm & Furen, Sarasota, for appellants.
J. Kennedy Hutcheson, Jacksonville, for appellee.
SCHLEGEL, LEW E., Associate Judge.
On March 30, 1973, appellant, Montgomery Enterprises, Inc., executed a written lease to lease three (3) new Mack dump trucks for four (4) years, with appellee, the Atlantic National Bank of Jacksonville. The lease provided, among other things, that rental payments were due the first of each month in forty-eight (48) consecutive monthly installments of $2,209.87 and that Montgomery was to carry physical damage, collision and liability insurance on the trucks. Appellants, Montgomery Hauling Company, Inc., and S.E. Montgomery, Jr., and Peggy Montgomery, his wife, each guaranteed the lease.
After considerable communication between the parties concerning Montgomery's late payments and the alleged failure to properly insure the trucks, on November 7, 1973, Atlantic notified Montgomery that it was in default of Sections 11 (failure to properly insure) and 16 (non-payment within ten (10) days after due date) of the lease and that Atlantic had elected to accelerate the unpaid balance due ($88,040.36).
The trucks were subsequently repossessed and sold for $55,500.00. Atlantic filed its Complaint, alleging that Montgomery failed to make payments timely and provide proper insurance coverage. In the Final Judgment, the trial court found that "... defendant Montgomery Enterprises, Inc., breached the lease ...," without specifying that defendant had breached one or both of the provisions alleged, and adjudged the defendants indebted to Atlantic in the sum of $52,184.38.
On the question of failure to make timely payments, the evidence shows that the first payment (April) was received by Atlantic on April 3; the May payment was received on May 14, 1973; the June payment was received June 20, 1973; the July payment *1080 was received July 11, 1973; the August payment was received August 21, 1973; and the September payment was received October 9, 1973. A check for the October and November payments plus late charge thereon was sent November 8, immediately following a telephone conference on the same date between Montgomery and Atlantic representatives, during which Atlantic's representative advised that a payment of $4,628.61 (two (2) payments plus interest and penalty) would be accepted and would bring the rental payments current. Atlantic received Montgomery's check in the stated amount on November 9, promptly rejected the tender and returned same to Montgomery. When Montgomery sent the check it was not aware that Atlantic had sent a letter terminating the lease and accelerating the balance due on November 7.
In its first two points on appeal, Montgomery argues that the trial court committed reversible error by:
1. Not finding Atlantic is estopped to declare a default, with acceleration of the rental balance due, because it refused to accept Montgomery's tender of the October and November payments in the amount orally requested by Atlantic.
2. Not finding Atlantic had waived payment by Montgomery of rent on the first of each month and had therefore waived Atlantic's contractual right to declare a default and accelerate the remaining rental balance due.
The case law of this state is clear that a creditor may conduct itself in such a manner that it either waives its right to declare a contract in default or is estopped to do so without first giving the debtor notice of its intent to declare a default. Commercial Credit Co., Inc. v. Willis (1936), 126 Fla. 444, 171 So. 304; Thomas N. Carlton Estate, Inc. v. Keller et al. (Fla. 1951), 52 So.2d 131; Enfinger v. Order of United Commercial Travelers (Fla.App. 1963), 156 So.2d 38; Fonact Corp. v. Superior Apartments, Inc. (Fla.App. 1971), 251 So.2d 537; Ford Motor Credit Company v. Waters (Fla. App. 1973), 273 So.2d 96; New England Mutual Life Insurance Company v. Luxury Home Builders, Inc. (Fla.App. 1975), 311 So.2d 160, and Raffa v. Dania Bank (Fla. App. 1975), 321 So.2d 83.
The parties, in the case at bar, agree that none of the seven (7) payments made by Montgomery and accepted by Atlantic were made on time and six (6) were accepted after the ten (10) day grace period.
In Ford Motor Credit Company v. Waters, supra, the seller had, over a period of eighteen (18) months, consistently accepted late payments from the buyer and had sent at least two (2) late payment notices, but repossessed the automobile without notice when the buyer fell two months in arrears. The appellate court, reversing the trial court which has incorrectly struck the buyer's claim for wrongful repossession, said:
"The facts before us adequately set up a pattern of conduct that would lead the appellee to believe that late payments would be accepted by the appellant and that he would be allowed to catch up in his payment arrears. Notification of a change in this pattern should have been given to appellee by appellant prior to the repossession of the automobile." (273 So.2d at page 100)
While the Ford Motor Company case deals with repossession, it also deals with the necessity to giving notice and an opportunity to "catch up in his payment arrears," rather than be required to pay the full balance due. It's difficult to imagine a case in which the facts would more clearly show a pattern of conduct that would lead a lessee to believe his late payments would be accepted. Montgomery was entitled to notice that Atlantic intended to change its pattern and an opportunity to pay its arrears prior to the lease being declared in default and the full balance accelerated.
Atlantic argues that Montgomery is contractually barred from arguing waiver because of paragraph 26 of the lease.[1] But *1081 the contract in the Ford Motor Credit Company case contained a similar provision,[2] and the Court pointed out its decision was not bottomed on waiver:
"But waiver is not the issue before us. The issue is the right of the buyer to rely upon the prior dealings that had taken place and the buyer's right to be notified of a modification of such conduct on the part of the appellant." (273 So.2d at page 100)
Also see Raffa v. Dania Bank (Fla.App. 1975), 321 So.2d 83.
In this case Montgomery tendered all arrearage prior to any notice, actual or constructive, of the lease being declared in default; and where a notice of default and acceleration and the late payment cross in the mail, the lessor is estopped to accelerate. Pearson v. Arthur (Fla.App. 1971), 248 So.2d 227. Also see River Holding Co. v. Nickel (Fla. 1952), 62 So.2d 702 and Clay v. Girdner (1931), 103 Fla. 135, 138 So. 490.
The next question is whether or not Montgomery breached section 11 (failure to properly insure) of the lease. Although the trial judge did not indicate which of the provisions of the contract were breached, the judge did say at the conclusion of the case:
"I think the insurance question on the plaintiff's side is questionable. I don't say that it is lacking in probative value or insufficient evidence at this point, but I think it's rather weak."
We agree. We have reviewed the record and find the evidence insufficient to sustain a finding that Montgomery breached section 11 of the lease.
REVERSED.
BOYER, C.J., and McCORD, J., concur.
NOTES
[1] covenant or condition of this Lease can be waived except by the written consent of the Lessor. Forbearance or indulgence by Lessor in any regard whatsoever shall not constitute a waiver of the covenant or condition to be performed by Lessee to which same may apply, and, until complete performance by Lessee of such covenant or condition, Lessor shall be entitled to invoke any remedy available to Lessor under this Lease or by law or in equity despite such forbearance or indulgence.
[2] waiver by seller of any default shall not be deemed a waiver of any other default.
"10. This contract constitutes the entire agreement between buyer and seller and no modification of any of the terms and conditions herein shall be valid in any event, and buyer expressly waives the right to rely thereon, unless made in writing duly executed by seller."