**In re Leonard BAGLEY, Debtor.**

**Bankruptcy No. 80–01460A.**

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

May 2, 1980.

Bruce Wilson, Atlanta, Ga., for petitioner.

Barclay T. Macon, Jr., Atlanta, Ga., for respondent.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

On May 2, 1980, the above–referenced debtor filed a voluntary petition for relief

in this Court. The debtor claimed all equity in a certain 1977 Toyota as exempt and pursuant to application by the trustee, an Order to abandon the property was entered on July 1, 1980. On July 16, 1980, the debtor filed an application to redeem the Toyota from The Atlantic Bank of Tampa (hereinafter "the Bank") for the sum of $913.01. On July 18, 1980, the debtor filed a motion for contempt asking that the Bank be cited for contempt for failure to comply with the Court's Order to abandon the Toyota; that the Bank be ordered to release its security interest in the Toyota upon receipt of payment in the amount of $913.01; that the Bank be ordered to pay all repossession and storage fees incurred in relation to the Toyota; and that the Bank be denied any attorney's fees.

On July 31, 1980, a hearing was held on the motion for contempt. At that hearing the Court found the Bank not to be in willful contempt, asked that the parties brief certain issues, and took the matter under advisement.

## FINDINGS OF FACT

### 1.

In February of 1977, the debtor borrowed $6,128.06 from the Bank as a purchase money loan secured by the 1977 Toyota. The transaction occurred in Florida.

### 2.

The loan was to be repaid in monthly installments of $130.43.

### 3.

The security agreement provided that upon default "the unpaid portion of the balance hereunder shall, without notice, become, forthwith due and payable and the holder, in person or by agent, may immediately take possession of said property..."

### 4.

The security agreement further provided that: "Waiver of any default shall not constitute a waiver of any other default."

### 5.

On December 10, 1979 and February 28, 1980, the debtor notified the Bank that payments would be made late and the Bank agreed to accept the payments.

### 6.

On March 2, 1980, the debtor tendered and the Bank accepted a payment in the amount of $145.00. Both parties recognized this as a deviation from the contract but the Bank indicated that it would continue to accept the debtor's payments.

### 7.

On April 8, 1980, the Bank, through an agent, repossessed the Toyota. No prior notice of the repossession or of the Bank's intention to return to the strict terms of the contract was given to the debtor.

### 8.

At the time of the repossession, the Toyota was worth $2,500.00 and the remaining balance of the loan was $913.01.

## CONCLUSIONS OF LAW

The task before the Court is to determine the interests of the parties in this Toyota. Both parties recognize that the debtor has a right to redeem the Toyota by paying the Bank "the amount of the allowed secured claim" of the Bank. 11 U.S.C. § 722. However, they differ as to what amount must be paid. The debtor claims that only the remaining installments on the loan must be paid, i. e. $913.01. The Bank contends that the amount of its allowed secured claim is the value of the Toyota (i. e. $2,500) since it is undersecured.[1]

The amount of the allowed secured claim is determined by reference to 11 U.S.C. § 506. Subsection (b) of this section provides that:

"To the extent that an allowed secured claim is secured by property the value of

1. The Bank claims that the following amounts are secured by its lien:

$1,157.39 — principal, interest and late charges as of May 2, 1980

| 1,182.50 | legal expenses |
| 525.15 | repossession costs |
| $2,865.04 | subtotal |
| X | 10% interest |
| $2,865.04 | Total (+ 10% interest) |

which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose." 11 U.S.C. § 506(b).

The legislative history to this section states:

"If the security agreement between the parties provides for attorney's fees, it will be enforceable under title 11, notwithstanding contrary law, and is recoverable from the collateral after any recovery under section 506(c)." 124 Cong.Rec. H 11,095 (Sept. 28, 1978); S 17,411 (Oct. 6, 1978).

In this case, the security agreement provides for the payment of 10% interest, attorney's fees of at least 15% and all other costs and expenses of repossession by the debtor if the Bank invokes the "Acceleration and Repossession" clause. To determine whether the debtor is liable for payment of these expenses, it is necessary to determine whether the Bank was entitled to invoke the "Acceleration and Repossession" clause. This determination must be made on the basis of the language of the security agreement and the law that governs its interpretation.

■ In order to determine what law governs the interpretation of any contract, including a security agreement, a federal court must follow the conflict laws of the state in which it sits. *Residential Industrial Loan Co. v. Brown*, 559 F.2d 438 (5th Cir. 1977).

"Georgia courts, in considering the choice of law question with respect to a contract, have consistently held that whether a contract is valid or enforceable is determined by the law of the place where it was made." *Id.* at 440.

■ This contract was executed and took effect in Florida and, therefore, the enforceability of the default provisions of the contract must be determined by reference to Florida law. The Florida Court of Appeals has held that

"past acceptances of late payments without repossession might give rise to a right by the purchaser to rely upon that course of conduct and a concomitant duty by the creditor to notify the buyer prior to his changing the pattern by retaking the property." *Raffa v. Dania Bank*, 321 So.2d 83, 86 (Fla.App.1975).

The Court found that there were "indications that Mrs. Raffa had in fact been allowed in the past to make up late payments and the Bank had accordingly not repossessed her automobile." *Id.* These indications created a genuine issue of fact as to whether the Bank was required to give notice of its intention to strictly enforce its security agreement.

■ It is also clear that the presence of a non-waiver clause does not affect the requirement of notice created by a course of conduct which deviates from the terms of the contract. *Montgomery Enterprises, Inc. v. The Atlantic National Bank of Jacksonville*, 338 So.2d 1078 (Fla.App.1976). As the Court stated there:

"But waiver is not the issue before us. The issue is the right of the buyer to rely upon the prior dealings that had taken place and the buyer's right to be notified of a modification of such conduct on the part of the appellant." *Id.* at 1080, citing *Ford Motor Credit Co. v. Waters*, 273 So.2d 96, 100 (Fla.App.1973).

In this case there is a regular pattern of acceptances of late payments by the Bank. Moreover, on one occasion the Bank accepted a payment which varied not only as to time of payment but as to amount of payment. Under these circumstances, the Court finds that the debtor had, under Florida law,[2] a right to notice prior to invoca-

**2.** The Court notes in passing that the same result would ensue under Georgia law. Georgia Code § 20–116 states:

"Where parties, in the course of the execution of a contract, depart from its term and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given the other of intention to rely on the exact terms of the agreement."

tion of the repossession clause by the Bank. The Court does not hold that the Bank was not entitled to repossess the Toyota under the terms of the security agreement. It holds only that the Bank was estopped by its conduct from enforcing the agreement until it gave notice to the debtor of its renewed intention to do so.[3] In the absence of such notice the repossession was wrongful.

Since the existence of liability for costs, 10% interest or attorney's fees hinges upon effectuation of the "Acceleration and Repossession" clause, the Court finds that the wrongful exercise of this clause creates no such liability under Florida law. Since the security agreement does not provide for attorney's fees or expenses incurred in a wrongful repossession, 11 U.S.C. § 506(b) does not require that the debtor pay such expenses in order to redeem his collateral.

Having disallowed legal expenses, repossession costs and the 10% interest repossession penalty, the Court is faced with the question of whether the allowed amount of the secured claim is $913.01 as claimed by the debtor or $1,157.39 as claimed by the Bank. There has been no showing by the debtor that the Bank had, by its conduct, indicated that it would not enforce the penalty provisions required by late payments or the provisions for payment of interest on the outstanding balance. The conduct of the Bank indicated only that the Bank would accept late payments rather than repossess. Therefore, the Court will accept the Bank's figure of $1,157.39 as the allowed amount of its claim.

It is hereby ORDERED and ADJUDGED that upon payment to the Bank by the debtor of $1,157.39, the Bank shall release its lien upon the Toyota and return that vehicle to the debtor.

It is FURTHER ORDERED and ADJUDGED that all costs of repossession and storage shall fall upon the Bank.

---

This section was applied on similar facts in *Smith v. General Finance Corp. of Georgia*, 243 Ga. 500, 255 S.E.2d 14 (1979); *see also Vines v. Citizens Trust Bank*, 146 Ga.App. 845, 247 S.E.2d 528 (1978) applying estoppel to statutory rights arising under Ga.Code § 109A–9–503.

3. It appears that Florida banks have been troubled by this notice problem since at least 1936. *See e. g. Commercial Credit Co. v. Willis*, 126 Fla. 444, 171 So. 304 (1936). A suggested solution might be to issue receipts bearing an appropriate notice when late payments are accepted.