DELL, Judge.
Kelly Tractor Co. (Kelly Tractor) appeals from a final judgment awarding appellees, R.J. Canfield Contracting, Inc. and R.J. Canfield, individually, $53,585, together with interest and costs on their counterclaim. We reverse.
On November 6, 1986, appellees applied to Kelly Tractor for credit in order to obtain a front-end wheel loader. The credit application provided:
9. As partial consideration for the extension of credit, the undersigned agree to the following terms:
All charges incurred during any month are due and payable by the 10th of the following month....
[[Image here]]
Should KELLY TRACTOR CO. ever, because of default, be obligated to institute any proceeding in replevin against us, we hereby waive the notice requirement pertaining thereto in accordance with F.S. 78.067.
The credit application also provided:
If any provision of this Credit Application conflicts with any purchase order which we have or hereafter may submit to KELLY TRACTOR CO., then the provisions of this Credit Application shall govern.
On November 20, 1986, the parties entered into a lease agreement for the front-end wheel loader. R.J. Canfield also executed a personal guaranty. The lease provided for a minimum term of twelve months and also provided appellees with the right to extend the lease on a month-to-month basis and with an option to purchase the wheel loader for a price of $85,000, plus simple interest at the rate of 3.9%. Kelly Tractor conditioned the extension of the lease and the option to purchase upon the lease not being in default. The lease also contained an acceleration clause applicable in the event of default.
On November 13, 1986, Kelly Tractor demanded and received payment for the first and twelfth months of the lease. The check issued by appellees contained a notation that it was for the “first and last months on 936 loader.” The bank initially dishonored the postdated check but subsequently cleared it when Kelly Tractor deposited the check a second time. The record shows that thereafter appellees made two late payments on the lease and failed to make the fourth, fifth and sixth payments.[1]
Kelly Tractor presented evidence that on or about March 16, 1987, one of its representatives called appellees’ secretary and told her that Canfield was falling behind in the payments. Canfield testified that he *263 thought that he had mailed the March payment and therefore ignored Kelly Tractor’s phone call. The record also contains undisputed evidence that during the month of April, 1987, Kelly Tractor twice called Can-field’s secretary about the arrearage and that appellees represented that the overdue payments were in the mail. On May 7, 1987, Kelly Tractor replevied the tractor without providing appellees with advance notice of the replevin action.
Kelly Tractor’s complaint for replevin also contained counts for civil theft and a claim against R.J. Canfield on his personal guaranty. Appellees filed affirmative defenses including a defense based upon waiver and estoppel and counterclaimed for conversion, breach of obligation of good faith, and civil theft and sought damages for loss of the use of the equipment.
The trial court apparently concluded that since Kelly Tractor had filed a UCC-1 listing itself as a secured party, that the lease agreement constituted a secured transaction governed by the provisions of chapter 679, Florida Statutes. The trial court then found that Kelly Tractor, because of appel-lees’ history of late payments, had not acted in good faith when it replevied the front-end loader without notice. Despite the express terms of the lease agreement, the trial court also found that:
While the Agreement provided it would run for at least twelve months, that contract also provided it would continue in full force and effect as long as payments continued to be made. In actuality, the agreement was intended to remain in effect until the entire price had been paid. That is, for a period of forty two (42) months. R.J. Canfield testified, and the Court accepts his statement that ... he fully intended, making all payments as they became due under the lease and ultimately acquiring title to the equipment....
Finally, the trial court found that the fair rental value of comparable equipment ranged between $3,300 and $4,000 per month and extended the rental value over a period of thirty-six months. It then awarded appellees $53,585 on their counterclaim.
Kelly Tractor argues that its contract expressly provided that any indulgence of appellees’ defaults did not waive Kelly Tractor’s right to strict compliance with the contract. Kelly Tractor further argues that the record does not show a pattern of conduct sufficient to support a claim of damages based on a breach of good faith or the defense that its inaction estopped it from asserting its rights under the lease agreement. Appellees, on the other hand, maintain, and the trial court found, that when Kelly Tractor accepted late payments, it waived its contractual right to declare them in default without prior notice. Appellees rely upon Ford Motor Credit Company v. Waters, 273 So.2d 96 (Fla. 3d DCA 1973) and Commercial Credit Co. v. Willis, 171 So. 304 (Fla.1936), also cited by the trial court in its final judgment.
We find the cases cited by appellees distinguishable from the instant appeal. In Waters, the debtor purchased an automobile and entered into a financing agreement for thirty-six months. The debtor made timely payments for approximately eight months, but thereafter made irregular and in many cases untimely payments. After twenty months of accepting such payments and on at least two occasions having furnished the creditor with late payment notices, the debtor repossessed the automobile. The court held:
This does not mean, however, that we feel that the appellant herein has waived his right to declare a default and repossess the automobile of appellee as was the case in Commercial Credit. This result is precluded due to that portion of the contract that provides, “Waiver by Seller of any default shall not be deemed a waiver of any other default. ” See: Kent v. Tallahassee Motor Co., 141 Fla. 789, 193 So. 821 [ (1940) ]. But waiver is not the issue before us. The issue *264 is the right of the buyer to. rely upon the prior dealings that had taken place and the buyer’s right to be notified of a modification of such conduct on the part of the appellant. The facts before us adequately set up a pattern of conduct that would lead the appellee to believe that late payments would be accepted by the appellant and that he would be allowed to catch up in his payment arrears. Notification of a change in this pattern should have been given to appellee by appellant prior to repossession of the automobile.
Id. at 100 (emphasis added). In Commercial Credit, the agreement did not contain a nonwaiver clause. The debtor missed the first three months of a twelve-month monthly installment agreement, but later paid the three-month balance. Thereafter, the debtor made timely payment. At a time when the debtor was no longer in arrears, the creditor repossessed the ear without notice. Appellee also cites Raffa v. Dania Bank, 321 So.2d 83 (Fla. 4th DCA 1975) and Montgomery Enterprises, Inc. v. Atlantic National Bank of Jacksonville, 338 So.2d 1078 (Fla. 1st DCA 1976). In Raffa, this court reversed a summary judgment in favor of the creditor because questions of fact existed as to the creditor’s right of notice before repossession where there was some evidence in the record that the creditor had in fact been allowed in the past to make up late payments and the bank had not repossessed her automobile. In Montgomery, also cited by appellee, the court stated that none of the seven payments Montgomery made, which Atlantic accepted, were timely made. It further noted that six of those payments were accepted after the ten-day grace period. Id. at 1080. The district court reversed a judgment in favor of the lessor and stated:
The case law of this state is clear that a creditor may conduct itself in such a manner that it either waives its right to declare a contract in default or is es-topped to do so without first giving the debtor notice of its intent to declare a default.
Id. at 1080.
We agree with the Montgomery court’s application of estoppel. However, the record in this case does not support the trial court’s judgment in favor of appellee. The express nonwaiver provision contained in the lease precludes the affirmative defense of waiver. See Ford Motor Credit Co. v. Waters. The record also fails to show a sufficient pattern of acceptance of late payments and forbearance by Kelly Tractor in the exercise of its rights under the lease to support appellees’ defense of estoppel. Here, Kelly Tractor accepted only two late payments on a twelve-month lease. Thereafter, the record is undisputed that Kelly Tractor contacted appellees and notified them that they were in arrears on their March and April payments. Under these facts, we hold that the trial court erred when it found that Kelly Tractor had not acted in good faith in exercising its rights to replevy the tractor without notice.
Accordingly, we reverse the final judgment in favor of appellees and remand this cause to the trial court with instructions to enter judgment for Kelly Tractor on the issue of liability and to award it damages based on the twelve-month lease, plus interest, reasonable attorney’s fees and costs.
REVERSED and REMANDED.
HERSEY, C.J., and GUNTHER, J., concur.

. The due dates shown in the following schedule coincide with the credit application signed by appellee.
Month No. Rental Period Description Date of Check and Number Payment Due
1 11/20-12/19 Initial Pmt. 11/13 #12402 11/20
2 12/20-1/19 2nd payment 1/20 #12685 1/10
3 1/20-2/19 3rd payment 2/23 #12838 2/10
*263 Month No. Rental Period Description Date of Check and Number Payment Due
2/20-3/19 4th payment Never received 3/10 ⅜
3/20-4/19 5th payment Never received 4/10 if)
4/20-5/19 6th payment Never received 5/10 >0
10/20-11/19 12th payment 11/13 #12402 11/13/86 M