John W. MEEKS, Plaintiff-Appellee,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

Nos. 71-2137, 71-2293.

United States Court of Appeals, Fifth Circuit.

May 22, 1972.

Carey A. Randall, Edward J. Atkins, Miami, Fla., for defendant-appellant; Walton, Lantaff, Schroeder, Carson & Wahl, Miami, Fla., of counsel.

Dixon, Bradford, Williams, McKay & Kimbrell, Warren D. Hamann, Frates, Floyd, Pearson & Steward, Larry S. Stewart, Gerald F. Richman, Miami, Fla., for plaintiff-appellee.

Before JONES, AINSWORTH and GODBOLD, Circuit Judges.

JONES, Circuit Judge:

Edris Diane Moss owned and was driving an automobile which was in a collision with another car. The appellee, John W. Meeks, was injured in the accident. Meeks recovered a judgment against Mrs. Moss. This judgment being unpaid, Meeks brought an action against the appellant, State Farm Mutual Automobile Insurance Company, claiming it was the insurer of Mrs. Moss' liability. State Farm contended that the policy it had issued to Mrs. Moss was not in force at the time of the injury to Meeks. At a jury trial a verdict was returned for Meeks. The district court was persuaded that an erroneous instruction had been given and granted a new trial. Upon the second trial Meeks obtained a jury verdict and a judgment on the verdict for $24,608.33 was entered. Meeks then submitted a petition for attorneys' fees with affidavits as to the value of the services rendered. The court entered judgment for attorneys' fees in the amount of $19,000. State Farm has appealed from each of the judgments. The appeals have been consolidated.

It was and is the contention of State Farm that the policy it had issued to Mrs. Moss had been cancelled and had not been reinstated at the time of the accident. It was and is the contention of Meeks that the policy had not been cancelled, that if it had been cancelled it had been reinstated, and that if it had been cancelled and had not been reinstated, State Farm was estopped to deny that the policy was in force at the time of the accident.

State Farm urges that the evidence was insufficient to support the finding, implicit in the verdict, that the policy was in effect and afforded coverage at the time of the accident. There was evidence [1] from which the jury could have found:

(a) Mrs. Moss and her husband had carried automobile liability insurance

---

1. Conflicts in testimony and questions of credibility are resolved in favor of the verdict.

with State Farm for some time. They were chronic payment delinquents. State Farm sent notices that the policies would be cancelled if premium payments were not made when due. It advised that the policies would be reinstated upon receipt of past due premium payments. It furnished addressed envelopes for the making of premium remittances. On occasions State Farm credited the amount of premium accruals for the period between the premium due date and the date the late payment was made. On other occasions no such credit was given.

(b) On December 7, 1965, State Farm sent a notice to Mrs. Moss that her policy would be cancelled on December 21, and saying, "Please forward your remittance without delay, and we will reinstate this policy, effective upon receipt of the amount due."

■ (c) On January 13, 1966, Mrs. Moss mailed in Miami, Florida, a check to State Farm at Winter Haven, Florida, in an envelope addressed to and furnished by it. On January 14, 1966, the remittance was received by State Farm.[2] On January 14 the collision occurred which was the source of the Meeks judgment against Mrs. Moss.

■ (d) State Farm included the check of Mrs. Moss in its bank deposit made on February 7, 1966. In its letter to Mrs. Moss of April 15, 1966, it sent to her a "refund" of the amount which she had paid to it in January.[3]

■ (e) Mrs. Moss sent to the Florida Insurance Commissioner the report of the accident required by the Florida Financial Responsibility Law[4] on its

2. Mrs. Moss testified that she mailed the check on January 13. The envelope in which the check was mailed bears the cancellation stamp "Miami, Fla. P M 14 Jan 1966". State Farm put in evidence its "cash ticket" identifying the remittance and having on it the date of January 14. State Farm wrote Mrs. Moss a letter dated April 15, 1966, as is shown by a copy from its file and introduced in evidence by it. In this letter State Farm denied coverage for the Meeks collision and stated that, among other things, "On January 14 we received $29.25 to reinstate the policy." We need not decide whether the statement in the letter creates an estoppel or is only an admission against interest. We can assume that the postmark is evidence of the time a mailing is processed by postal employees but we do not assume that it creates any irrebuttable presumption. The question was for the jury as to the time the check reached State Farm.

3. The retention of a delinquent premium payment is a waiver of the right to cancel a policy or to refuse reinstatement. 18 Fla.Jur. 636, Insurance §§ 661–662; 13 Fla.Law and Practice 243, Insurance § 302; Industrial Life & Health Ins. Co. v. Cofield, 110 Fla. 315, 148 So. 549. The rule is particularly applicable where, as here, there has been a long continued custom of making and accepting past due premiums. 18 Fla.Jur. 638, Insurance § 663.

4. Each owner and operator involved in an accident or conviction case within the purview of this chapter shall furnish evidence of automobile liability insurance, motor vehicle liability insurance, or surety bond within thirty days from the date of the mailing of notice of accident by the commissioner in such form and manner as he may designate. Upon receipt of evidence that an automobile liability policy, motor vehicle liability policy, or surety bond was in effect at the time of the accident or conviction case, the commissioner shall forward by United States mail, postage prepaid, to the insurer or surety insurer a copy of such information and shall assume that such policy or bond was in effect unless the insurer or surety insurer shall notify the commissioner otherwise within twenty days from the mailing of the notice to the insurer or surety insurer; provided that if the commissioner shall later ascertain that an automobile liability policy, motor vehicle liability policy, or surety bond was not in effect and did not provide coverage for both the owner and the operator, he shall at such time take such action as he is otherwise authorized to do under this chapter. Proof of mailing to the insurer or surety insurer may be made by the commissioner or any em-

form S R 21, giving a report of the collision with Meeks and naming State Farm as her liability insurer. The Insurance Commissioner sent a copy of the S R 21 form to State Farm. It made no response by denial of liability or otherwise.[5]

■ State Farm in its brief has stated categorically that its policy had been cancelled and had not been revived. If this ipse dixit be accepted as a matter of fact or of law, or both, then there would have been no question for the jury. Stating its position in a different and perhaps a better manner, State Farm contends that there was insufficient evidence to submit the question of coverage to the jury. It would have been better, particularly since if Meeks succeeded he would recover the undisputed amount of the Meeks judgment against Mrs. Moss,

if specific questions had been propounded to the jury as to each of Meeks' theories as to State Farm liability. Such was the too late conclusion of the judge who presided over the first trial who, in the order granting a new trial, said, "The verdict of the jury in this case emphasizes once more the value of using special interrogatories." The admonition was unheeded by the judge who presided over the second trial. But, we conclude, there was evidence sufficient to pose a jury question on each of the theories posed by Meeks, and each of such theories was predicated upon a sound legal principle. The judgment based on State Farm's insurance liability, Appeal No. 71–2137, is affirmed.

The district court entered a judgment for $19,000 attorneys' fees to be paid for the services of Meeks' counsel under a Florida statute.[6] State Farm says that

ployee of his office by naming the insurer or surety insurer to whom such mailing was made and specifying the time, place and manner of mailing. F.S.A. § 324.091(1).

5. The S R 21 form was received in the office of the Insurance Commissioner on May 7, 1966. The form was in the file of the Commissioner. The custodian of the records of his office testified that a copy of each such form was transmitted to the insurer within twenty-four hours after being received. State Farm challenges the proof of the sending of the S R 21 form to State Farm from the office of the Florida Insurance Commissioner and the lack of response by State Farm on the asserted ground that the proof should have been made by the testimony of a witness who mailed the form to State Farm rather than relying upon indirect evidence based upon the Commissioner's file and the testimony of members of the Commissioner's staff with respect thereto. This evidence showed that the S R 21 form, a copy of which was in the file, had been received on May 7, 1966 and mailed to State Farm not later than the following day. The testimony showed that the Commissioner's file contained no response from State Farm. The lack of any response indicated that State Farm did not intend to deny coverage, State Farm's file did not contain the S R 21 form and one of its employees testified that when such a form was received it would be discarded if State Farm had liability but

would be retained if it had denied or intended to deny liability. Although the proof was not made precisely as specified in the Florida statute it was nevertheless admissible under Rules 43(a) and 44, Fed. Rules Civ.Proc. and the Federal business records statute, 28 U.S.C.A. § 1732. Marcus v. United States, 5th Cir. 1970, 422 F.2d 752; United States v. DeGeorgia, 9th Cir. 1969, 420 F.2d 889; McClanahan v. United States, 5th Cir., 1961, 292 F.2d 630; see McCormick, Evidence, p. 609, § 289; 5 Wigmore, Evidence (3d Ed.), p. 392, § 1531. There are two Florida decisions as to the effect of the failure of an insurer to deny liability after receiving the S R 21 notice. The earlier decision holds that the insurance company is liable as a matter of law. American Mutual Fire Insurance Co. v. Illingworth, Fla.2d Dist.Ct.App.1968, 213 So. 2d 747. In the more recent case it is held that the failure of an insurance company to respond to an S R 21 notice with a denial of coverage raises a rebuttal presumption of liability. Phoenix Insurance Co. v. McQueen, Fla.1st Dist.Ct.App.1970, 240 So.2d 79. The conflict between these District Court of Appeals decisions has not, so far as we are informed, been resolved by the Supreme Court of Florida.

6. (1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of an insured or the named beneficiary under a policy or contract executed by the insurer, the trial court, or, in the event

the fee is excessive. After the entry of the judgment following the first trial, Meeks applied for attorneys' fees and submitted affidavits of lawyers who put values on the service then rendered. Meeks' counsel valued the service at $10,000. Others, whose affidavits were put in by Meeks, had a range between $9,565.38 and $10,250. State Farm's lawyer thought $4,000 was ample and it submitted an affidavit of another lawyer who fixed the amount at $6,000. After the entry of the judgment following the first trial the district court concluded that the submission of one of the issues to the jury by an instruction requested by counsel for Meeks, was error requiring a new trial. Another request was made for attorneys' fees after the second trial. Affidavits of Meeks' counsel said an additional $9,750 or $9,660 had been earned. He brought in affidavits of other lawyers who gave opinions for additional fees ranging from $8,920 to $9,500. State Farm's attorney said $2,000 for the second trial and an overall figure of $5,000 would be enough. The district court made no breakdown between first and second trial. The award of $19,000 would indicate that the district court had shaded the Meeks' claim to even thousands and allowed $10,000 for the first trial and $9,000 for the second trial.

This is not the first occasion of this Court's consideration of the reasonableness of attorneys' fees. In the usual course of legal abrasions each litigant pays his own lawyer. The requirement that the unsuccessful insurer shall pay the legal fee of the successful beneficiary of its policy is in the nature of a penalty. American Fidelity and Casualty Company v. Greyhound Corporation, 5th Cir. 1958, 258 F.2d 709. The purpose is not one of punishment but to encourage insurers to pay valid claims without undue delay. The fee allowed must be reasonable. American Fidelity and Casualty Company v. Greyhound Corporation, supra. In addition to other matters, courts should consider, in fixing attorneys' fees, the amount involved, the results of the suit and the care and diligence exhibited. Berkshire Mutual Insurance Co. v. Moffett, 5th Cir. 1967, 378 F.2d 1007. And see Stuyvesant Insurance Company of New York v. Nardelli, 5th Cir. 1961, 286 F.2d 600. The amount of the district court's award is nearly eighty per cent of the amount of Meeks' recovery. Without minimizing the complexity of the issues, both of law and fact, we think it might well be said that, measured by the amount involved, the fee allowed is more than the traffic should bear.

In looking at the results achieved by Meeks' counsel we first observe that the case was tried twice. It is apparent that the amount of the award for attorneys' fees included services at both trials. The second trial was required because of the granting of an erroneous instruction which had been requested by Meeks' counsel. It would not be improper to consider whether counsel should be compensated by his client's adversary for a second trial which was induced by him. If this be a matter to be reckoned then should there be some thought devoted to the question as to whether the expense to State Farm of the second trial should be shared by Meeks' counsel? These factors would seem to be elements of reasonableness.

In determining the amount of attorney's fees, affidavits are to be con-

of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
   (2) As to suits based on claims arising under life insurance policies or annuity contracts, no such attorney fee shall be allowed if such suit was commenced prior to expiration of sixty days after proof of the claim was duly filed with the insurer.

   (3) Where so awarded, compensation or fees of the attorney shall be included in the judgment or decree rendered in the case. F.S.A. § 627.0127.

sidered but are not binding. Lumbermen's Mutual Casualty Co. v. Renuart-Bailey-Cheely Lumber & Supply Co., 5th Cir. 1968, 392 F.2d 556. Fees may be based upon the Court's knowledge and experience. Some while ago this Court held:

> The court, either trial or appellate, is itself an expert on the question (of attorneys' fees) and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid or testimony of witnesses as to value. Campbell et al. v. Green, 5th Cir. 1940, 112 F.2d 143.

The quoted statement of principle was approved by this Court in a recent case where it was said:

> . . . appellate courts, as trial courts, are themselves experts as to the reasonableness of attorneys' fees, and may, in the interest of justice, fix the fees of counsel albeit in disagreement on the evidence with the views of the trial court. B-M-G Investment Co. v. Continental/Moss Gordin, Inc., 5th Cir. 1971, 437 F.2d 892.

Looking at the entire record and considering all of the elements that go into the make-up of the reasonable fee, we conclude that for services in the district court Meeks' counsel should have an award of $9,500. The judgment of the district court in Appeal No. 71–2293 is reversed and the cause is reversed and remanded for the entry of a judgment for the amount of $9,500. We find that a reasonable fee for the services of Meeks' attorneys in this Court is $1,500 for which judgment will be entered.

Appeal No. 71–2137 affirmed.

Appeal No. 71–2293 reversed and remanded.

Judgment for attorneys' fee on appeal.

AINSWORTH, Circuit Judge (dissenting):

This case was tried twice in the District Court. On the first trial the verdict of the jury in favor of plaintiff was set aside by the District Court (Judge Atkins) and a new trial ordered because the Trial Judge felt he had erred in submitting to the jury the issue of whether State Farm's policy had been cancelled as of December 21, 1965 for nonpayment of premiums. (R. 1000–1004.) [1]

---

1. The full text of Judge Atkins' "Memorandum Opinion and Order on Post Trial Motions" reads as follows:

The verdict of the jury in this case emphasizes once again the value of using special interrogatories.

The plaintiff's thrust for liability against the carrier of his judgment debtor was based upon three contentions: (1) a course of conduct by the defendant in permitting its insured Edris Diane Moss to reinstate her policy after notice of cancellation,[1] (2) retention, without satisfactory explanation, of the premium submitted after proper cancellation, and (3) failure to deny recovery after receipt of an SR 21 Form from the Florida Financial

1. The insured husband, Edward Moss, who also held a policy with the defendant, testified in effect that every premium payment on their policies was late and several were delinquent. No premium except the last, which was made 24 days *after* cancellation of Mrs. Moss' policy, was ever paid in full.

Responsibility Division requiring the carrier to respond within 30 days, otherwise coverage would be deemed to have been in effect. The jury was aware of these three issues as shown by the question which they submitted to the Court requesting to be re-instructed.

The critical date was January 14, 1966 on which day the accident occurred. If the coverage was not effective on that date, no recovery is possible by the plaintiff in this action unless under issue (3) above defendant is estopped to deny coverage.

Issues (1) and (2) were spurious.

The third was bona fide and could have been the foundation for an unassailable jury verdict. Unfortunately, special interrogatories were not submitted to the jury, making it impossible to determine the basis for the verdict.

To be sure, I put my imprimatur on all three issues by charges given to the jury. I also instructed them a second time at their request. Shortly thereafter, the verdict was returned.

On the second trial the District Court (Judge King) again submitted the same issue to the jury, which Judge Atkins believed was erroneous and sufficient to warrant setting aside the jury verdict and granting a new trial.

I would reverse in this case and grant a new trial because of the erroneous instruction and submission; also because the evidence so strongly points to the fact that State Farm's policy was cancelled effective December 21, 1965 and payment of delinquent premium by check was not received until January 15, 1966, one day after the accident upon which the present suit is based and as pointed out by Judge Atkins "was some 45 days after it was due and 24 hours after the policy was cancelled." Even had the insured's check for premium been received, as contended by plaintiff, on January 14, 1966—a most unlikely event under the evidence herein—the policy would not have been reinstated under the uniform practice of the insurance company until 12:01 a. m. of the next succeeding day, i. e., January 15, 1966, after the accident sued on. In my view the defendant insurance company is being unjustly required to pay for

---

The specious quality in issue (1) had its genesis in the assumption that the insured, Edris Diane Moss, was either led to believe she at all times had coverage or the policy was reinstated *as of* the cancellation date.

State Farm followed the practice, according to its service superintendent, Wayne Vancil, when payment of a premium was made after it was past due, of reinstating the policy at 12:01 a. m. of the day following the posting of the premium. When the premium of $68.40 was not paid on September 23, 1965, a notice was mailed on September 28, cancelling the policy at 12:01 a. m. on October 11. The notice also stated: "Please forward your remittance without delay, and we will reinstate the policy effective upon receipt of the amount due." Payment of $40.25 was received on October 14 and the policy was reinstated as of October 14, 1965. Credit was allowed for the three days it was out of force. The last payment, in the amount of $29.25 was due on December 1, 1965. When it was not received, a notice of cancellation, effective December 21, 1965, was mailed on December 7, 1965. As shown by Defendant's Exhibit 1, a check in the amount of $29.25 was mailed from Miami, Florida in the "P.M." of January 14, 1966 to State Farm in Winter Haven, Florida. This was some 45 days after it was due and 24 days after the policy was cancelled. The policy was not reinstated although the premium was retained, pending possible placement of the insurance in a subsidiary of the defendant, until April 15. However, construing every provision, custom and action against the defendant on this issue, the effective date of reinstatement was 12:01 A.M. January 15, the day following the accident.

I charged the jury on issue (2), inter alia, as follows:

"Receipt and retention of an insurance premium to reinstate a policy previously cancelled, in the absence of satisfactory explanation of the reason for such retention, constitutes a waiver by the insurer of the right to deny coverage."

In doing so, I relied upon Johnson v. Life Ins. Co. of Georgia, 52 So.2d 813 (Fla.1951) and Enfinger v. The Order of United Commercial Travelers of America, 156 So.2d 38 (Fla.App. 1963). In each of these, payment of the retained premium was received *prior* to the occurrence giving rise to the claim. Here the payment was received the day *after* the accident out of which plaintiff's judgment against Edris Deane Moss arose.

The third issue was a legitimate one. The jury could have believed the defendant received an SR 21 reciting that Mrs. Moss was insured with the defendant on the day of the accident and failed to deny coverage. If so, this was a legal basis for a verdict against the defendant. The American Mutual Fire Insurance Co. vs. Illingworth, (Fla.App. 1968) 213 So.2d 747.

In light of the above erroneous submission to and instruction of the jury, the defendant's motion for new trial must be and hereby is granted. The balance of the motion is denied.

DONE AND ORDERED at Miami, Florida this 17th day of July, 1970.

(Signed) C. CLYDE ATKINS
UNITED STATES DISTRICT JUDGE

damages on a policy which was not in effect when the accident occurred under any reasonable construction of the evidence.

I, therefore, dissent.