416 So.2d 1190 (1982)
William A. BAKER, M.D., the Florida Physicians Insurance Reciprocal, and Florida Patients Compensation Fund, Appellants,
v.
Manuel E. VARELA, Appellee.
No. AG-252.
District Court of Appeal of Florida, First District.
July 2, 1982.
*1191 John Moffitt Howell, Howell & Howell, Jacksonville Beach, for appellants.
Jeffrey D. Dunn, Jacksonville, for appellee.
LARRY G. SMITH, Judge.
Having received an adverse jury verdict in a medical malpractice action, appellants seek review of the award of attorney's fees to plaintiff-appellee, and costs expended by appellee in the prosecution of the suit. Appellee in his action recovered a judgment of $15,000.00, and the court awarded attorney's fees of $20,000.00, together with costs expended in the amount of $5,785.79. Appellants contend that the award of attorney's fees is clearly excessive, and not in accordance with the guidelines established by Florida case law. As for the matter of costs, appellants contest the propriety of the award as to certain items. They also contend that certain fees and allowances for medical advisory service and expert witness preparation and testimony were improper or exorbitant, and were not supported by affidavit or testimony as to reasonableness. We affirm.
On the attorney's fees issue, appellants argue that an award of attorney's fees "must bear a reasonable relationship to the results obtained." Ruwitch v. First National Bank of Miami, 327 So.2d 833 (Fla. 3rd DCA 1976); Lumbermens Mutual Casualty Company v. Quintana, 366 So.2d 529 (Fla. 3rd DCA 1979); All-Star Insurance Corporation v. Scandia, Inc., 321 So.2d 575 (Fla. 3rd DCA 1975); and Meeks v. State Farm Mutual Automobile Insurance Co., 460 F.2d 776 (5th Cir.1972). In these cases the courts view the "results obtained" solely in terms of the monetary judgment recovered. We do not agree that the monetary recovery is the only criteria by which results obtained may be judged in an award of attorney's fees under Section 768.56(1), Florida Statutes (Supp. 1980).[1]
The character of the litigation involved in the above cited cases is galaxies apart from a medical malpractice action, so far as an award of attorney's fees to a prevailing plaintiff is concerned. In Lumbermens, the issue was coverage under a "resident of the same household" clause in a liability insurance policy, in which the maximum (and actual) recovery was limited to $15,000.00. An attorney's fee award of $20,000.00 was held excessive. Meeks also involved automobile insurance litigation.
In Ruwitch, an action on a contract of guaranty, the parties had stipulated that a reasonable attorney's fee would be $17,500.00, based on a judgment of $120,000.00. On an earlier appeal, error was found in the amount of the judgment for damages, reducing it to $22,352.46 (291 So.2d 650, at 653). On remand, the trial court re-determined reasonable attorney's fees as directed by the appellate court, but reduced the amount to $15,000.00, which was only $2,500.00 less than the original award. This was held error, and the appellate court reduced the fees to $8,000.00 (327 So.2d 833).
In All-Star, the trial court set aside a jury verdict of $60,000.00 recovered for losses under several fire insurance policies, and entered judgment for $135,000.00, the aggregate face amount of all policies. Based upon this latter figure, as the amount recovered, the trial judge awarded attorney's fees of $30,000.00. The appellate *1192 court reinstated the jury verdict for $60,000.00, and ordered reassessment of attorney's fees based on the reduced amount.
None of the above cases furnish a guide for assessment of plaintiff's attorney's fees in medical malpractice cases. We agree, as a general proposition, that "reasonable" attorney's fee awards should take into account the benefits achieved through the litigation. 12 Fla.Jur.2d, Costs, § 36. However, we are unable to accept appellants' argument that the dollar amount of recovery controls the award of attorney's fees in every type of case, nor that an award is per se "unreasonable" merely because the fee exceeds the recovery. By way of illustration, we note the recent decision of the Fifth District in La Ferney v. Scott Smith Oldsmobile, Inc., 410 So.2d 534 (Fla. 5th DCA 1982), ordering an award of attorney's fees of between $4,300.00 and $5,800.00, although the recovery (under Chapter 501, Florida Statutes, "Florida Deceptive and Unfair Trade Practices Act") amounted to only $2,665.31 compensatory damages.
We do agree, in principle, that litigation expenses ought not to be out of proportion to the wrong sought to be redressed, or the benefits reasonably to be expected. But it is not realistic to expect or demand a balancing of expense and effort with the end results in every case. Obviously, the skill and zeal with which a case is prosecuted, or defended, can have a direct bearing on the expense and effort required by the opposing side. A case that is unreasonably defended could well justify extraordinary prosecutorial efforts, and vice versa. However, no doubt the trial courts, as well as this court, will be sensitive to over-prepared and over-tried cases by either side, particularly when excessive costs or attorney's fee demands are made.
It appears to us that in reviewing a plaintiff's attorney's fee award under the statute, certain factors peculiar to this kind of litigation merit consideration. The Florida Legislature, in enacting the unique attorney's fee statute in question, specifically distinguished medical malpractice litigation from ordinary tort litigation.[2] It appears to us that there are grounds for distinguishing plaintiff's attorney fee awards in such cases from awards in ordinary tort litigation. Appellants' expert witness admitted that plaintiff's counsel in medical malpractice litigation shoulders a heavy burden, even exceeding that of defense counsel in the same case. Furthermore, the statute itself, which was intended as a deterrent to unjustified prosecution or defense of medical malpractice claims,[3] may not in actual operation achieve the even-handed results which were no doubt sought through its enactment. This is so because in the absence of such a statute juries awarding damages to an injured patient would be very likely, consciously or unconsciously, to take into account the legal expense incurred by the plaintiff, and adjust their award accordingly. Thus, it does not necessarily follow that a losing defendant will incur any additional liability by reason of the statute. On the other hand, the same cannot be said in the case of a losing plaintiff. Therefore, in a somewhat oblique fashion, the statute itself imposes an even heavier burden and responsibility upon plaintiff's counsel who undertakes a medical malpractice action.
We can take judicial notice that in most instances, if not all, plaintiff's counsel will be required to undertake medical malpractice litigation on a contingency basis. Counsel must therefore be concerned with the proper evaluation and prosecution of a claim to a successful conclusion for his client's benefit, and his own economic survival. By virtue of the attorney's fees statute *1193 he must also be concerned that his client might suffer the additional impact of an attorney's fee award in event his preparation and diligence in handling the case should prove unsuccessful. Thus, it is reasonable to expect more screening, evaluation and care than is required in other less volatile areas of litigation.[4] Under these circumstances, we are less inclined than we might be in other types of litigation to accept appellants' "comparative" approach to attorney's fee awards. Implicit in appellants' argument on this point is the notion that malpractice plaintiff's attorneys should be required, in effect, to subsidize patient's litigation, except in cases likely to produce a relatively high monetary award, a proposition that we are unable to accept.
No abuse of discretion has been shown in the trial court's award of attorney's fees based on the evidence as to the number of hours expended in preparation and trial, the skill and expertise demanded and exhibited by plaintiff's counsel, the nature and complexity of the litigation, the results obtained, and the several other factors touched upon at the attorney's fees hearing.
In their second point, appellants seek reversal of the cost award because of the trial judge's failure to itemize the costs allowed. See, Mac Neill v. Marks, 61 So.2d 648 (Fla. 1952); Sims v. Barnes, 289 So.2d 753 (Fla. 1st DCA 1974). The only written order mentioning costs is the final judgment, which awards lump sum costs in the amount of $5,785.79. Plaintiff's motion to tax costs contains an itemization of costs totalling $7,174.49. Appellants filed objections to the motion, pointing out certain deficiencies in the manner in which the items were stated, and specifically objecting to certain items. It was also urged that the motion was not sworn to, and that the fee sought for plaintiff's expert witness was clearly excessive, and not supported by any evidence at the trial or otherwise. At the commencement of the hearing on the motion to tax costs, and objections thereto, counsel for appellees specifically brought to the trial court's attention the fact that there were no affidavits, receipts, and "there is nothing to verify the payment of costs or the reasonableness of those payments."
Although we agree that the presentation on application for assessment of costs was lacking, we fail to find reversible error in the trial judge's award of costs. We first note that an itemization of costs awarded, when less than the full amount requested in the motion to tax costs, would facilitate appellate review of particular items. However, we note that an item by item objection was made before the trial court below, rulings were obtained on various items, and no request was made for further itemization in the final judgment. Furthermore, no petition for rehearing was presented to the trial court, although an itemization of costs could easily have been secured in this manner. We therefore find the failure to itemize costs either in the final judgment or other order has not been preserved for appellate review. 3 Fla.Jur.2d, Appellate Review, § 92.
In response to appellants' arguments concerning the cost award, we point out that the cost of copies of depositions, when the facts warrant it, may be taxable. International Patrol and Detective Agency, Inc. v. Aetna Casualty & Surety Co., 396 So.2d 774 (Fla. 1st DCA 1981). Appellants also complain of a cost item of $1,262.50 paid to the National Medical Advisory Service for a "probable cause" determination received by plaintiff's counsel prior to filing the suit. However, the hearing transcript *1194 clearly reveals that the trial court disallowed this item of cost, which is apparently reflected in the reduced amount appearing in the final judgment.[5]
Finally, with respect to the absence of evidence to support the reasonableness of the expert witnesses charges, we have noted appellants' objections below, and their argument here that such evidence is required. See Lafferty v. Lafferty, 413 So.2d 170 (Fla. 2nd DCA 1982). However, we have viewed the lengthy argument and discussion between the court and counsel at the cost hearing, and we have concluded that despite the formal objections raised, it appears that the award of the expert witness fees and allowances in question was left to the discretion of the court based upon the arguments presented and authorities cited to the court. Although the intentions of counsel might have been otherwise, it appears to us that the record is at least susceptible to this interpretation. It would have been a simple matter to advise the trial court, by means of a motion for rehearing, of this asserted error in the procedure followed. This was not done. Furthermore, the amounts involved are not of such magnitude as to indicate grossly excessive charges or overreaching.
For the foregoing reasons, the judgment appealed is AFFIRMED.
JOANOS and THOMPSON, JJ., concur.
NOTES
[1] Section 768.56(1) provides, in part, that the court "shall award a reasonable attorney's fee to the prevailing party" in medical malpractice cases, unless the losing party is insolvent or poverty-stricken. The law provides that before initiating such an action, "it shall be the duty of the attorney to inform his client, in writing," of the provisions of this section.
[2] Whether the particular distinction made by the Legislature is a valid one is a matter we are not here called upon to decide.
[3] The avowed purpose of the attorney's fees provision is to "screen out claims lacking in merit and ... enhance the prompt settlement of meritorious claims ...," on the theory that "individuals required to pay attorney's fees to the prevailing party will seriously evaluate the merits of a potential medical malpractice claim... ." Preamble, Chapter 80-67, Laws of Florida (1980).
[4] The specialized nature of this type of litigation is evident from the extensive legislative treatment it has received in the recent past. See, for example, Section 768.44, Florida Statutes Annotated (1982 annual pocket part), medical liability mediation panels, declared unconstitutional in operation, Aldana v. Holub, 381 So.2d 231 (Fla. 1980); Section 768.45, medical negligence, standards of recovery; Section 768.46, medical consent law; Section 768.48, itemized verdict; Section 768.49, remittitur and additur; and Section 768.50, collateral sources of indemnity.
[5] The disallowance of this expense has not been cross-appealed, and we express no opinion as to the propriety of this ruling by the trial judge.