JOANOS, Judge.
Appellants, Robert E. Holley and James R. Hunsuck, personal representatives of the estate of Mildred F. McQueen, appeal numerous trial court rulings in this probate proceeding. Specifically, appellants challenge: (1) the probate court’s failure to award costs incurred in the administration of the estate; (2) the probate court’s finding that there was no fee agreement between the personal representatives and the attorney they retained to assist in administering the estate; (3) the probate court’s finding that there was no fee agreement between the attorney and the trustee; (4) the probate court’s decision to allow First Guaranty Bank’s former counsel of record to testify for the bank as an expert witness; (5) the probate court’s finding that section 733.6171, Florida Statutes (1995), applied retroactively to determine the amount of the attorney’s fee to be awarded for the services performed by the attorney for the personal representatives; (6) the probate court’s finding that section 733.6171(3), Florida Statutes (1995), controls the determination of the attorney’s fee for services she performed as attorney for the trustee; (7) the probate court’s application of the statutory formula to calculate the amount of the attorney’s fee; (8) the probate court’s determination that the attorney’s charges were “substantially unreasonable”; and (9) the constitutionality of the probate court’s application of the statutory changes to section 733.6171, Florida Statutes (1995), to this case. We affirm in part, and reverse in part.
Mildred Frances McQueen died December 28, 1993. On January 18, 1994, appellants, the personal representatives named in McQueen’s will, filed a petition for administration of the estate. At that time, the estimated values of the known assets in the estate and in the decedent’s revocable living trust included:
Cash $ 50,000.00
Stocks and Bonds $310,000.00
Real Estate $ 38,000.00
Personal Property $ 10,000.00
Total $408,000.00
On February 15, 1994, the will was admitted to probate and the designated personal representatives were appointed. McQueen never married and had no lineal descendants. The personal representatives designated in the will retained the decedent’s attorney to assist them in administration of the estate. The attorney had prepared the will and revocable living trust at issue. The primary residuary beneficiaries of the trust were two of McQueen’s nieces, a great niece, and a great nephew. Specific bequests were made to other family members and to various charities. McQueen signed the will and trust documents on May 3, 1993. Article VII of the will, captioned “Jointly Owned Property,” provided that any property or banking accounts held jointly with McQueen at the time of her death would pass to the surviving joint owner.
*749 McQueen’s revocable living trust named Paine Webber Trust Company of Jacksonville as successor trustee in the event of McQueen’s incompetency, or death. However, after McQueen’s death, Paine Webber was unable to serve. When the account executive who managed McQueen’s account realized that Paine Webber would be unable to handle the trust, he contacted the attorney for the personal representatives and an officer of First Guaranty Bank and Trust Company (appellee). Upon ascertaining that the bank could serve as successor trastee, the account executive moved the account to First Guaranty Bank and Trust Company. The account transfer was accomplished by April 27, 1994, although some dividends were moved in May 1994.
On February 14, 1995, the personal representatives filed a petition for discharge and final accounting, together with their time sheets, and a fee claim in the amount of $14,200 each. On March 10, 1995, the trustee (First Guaranty Bank) filed an objection to the petition for discharge and final accounting, and a motion for surcharge. On August 8, 1995, the bank filed a petition to review the compensation of the attorney for the personal representatives. The bank took the position that the attorney—
undertook unnecessary action on behalf of the estate which attributed to her excessive fees. For example, Ms. Slagle prepared and filed a Form 706, United States Estate Tax Return. The preparation and filing of such return along with associated activities in its preparation were inappropriate, unwarranted, and wasteful since no Form 706 was required pursuant to Title 26 U.S.C. § 6018(a)(1) and 26 C.F.R. § 20.6011-l(a).
On August 16,1995, the personal representatives and their attorney executed a written fee agreement memorializing their earlier oral agreement. The attorney represented the personal representatives continuously from the date of Ms. McQueen’s death, including the interim period when the personal representatives served as de facto trustee. The attorney represented the trust until March 6, 1995, when the bank terminated her services.
At the hearing on the bank’s petition to review compensation of the attorney, the attorney stated her oral agreement with the personal representatives provided that she would bill at her standard rate of $200 per hour for services she performed on their behalf in connection with the probate of McQueen’s will. The attorney explained that her first two invoices reflected charges of $165 per hour, rather than the $200 hourly rate, due to her perception that the beneficiaries of McQueen’s estate were extremely fee conscious, and the likelihood of difficulty concerning attorney’s fees. The trust officer of First Guaranty Bank also testified that he understood the attorney would represent the trust based on an hourly rate. The trust officer was aware of the increase in the attorney’s hourly rate, which appeared without explanation in her third statement. Although the bank paid the attorney’s first three invoices in the amount billed, it refused to pay the fourth statement.
The attorney stated she met with the personal representatives[1] and with the trust officer of First Guaranty Bank, to consider whether a Form 706 United States Tax Return should be filed for the McQueen estate.[2] The attorney stated the decision was made to file the Form 706, because—
you are required to file the form, not only based on the value of what the decedent actually had left but also on transfers during her lifetime. Because there were — ■ well, Mr. Holley is a CPA, and because there were no close family members with any management authority over her assets, none of us were sure exactly what she had.
We did know that there were a lot of joint accounts floating around. We did know that there were a lot of transfers. We knew that there were — and she had talked to me about joint accounts, transfers. We didn’t know whether or not she *750 was the beneficiary of her deceased sister’s estate.
She had a boyfriend that she had owned joint accounts with, she had nieces and nephews that she owned joint accounts with, and we went on what we had.
We made every attempt to round up her assets, but we weren’t sure the personal representatives were taking on personal liability for estate taxes if we were wrong on the number, and we opted to file the return based on what we know.
An attorney experienced in trust litigation testified in support of the joint decision to file the Form 706. The witness explained that when an institutional investor designated as trustee refuses to serve, “[ejither the trust is forfeited or the personal representative serves as de facto trustees, and. that is in point, in fact, what happened until First Guaranty came on board.” The attorney witness opined that filing a Form 706 was appropriate in this case, because certified public accountants and personal representatives for an estate place themselves at personal financial risk should they fail to do so when an estate approaches a total value of $600,-000. The witness further stated that little time is involved in the preparation and filing of a Form 706.
Mr. Holley, co-personal representative and certified public accountant, testified that the personal representatives agreed to pay their attorney a fee of $200 per hour for her services to the personal representatives. According to Mr. Holley, often a certified public accountant and an attorney prepare a Form 706 tax return, even though the threshold for filing a return has not been met. The Form 706 is filed—
to establish the basis in the estate’s assets, so that upon subsequent sale we have some point of reference in determining gains and losses....
Another reason is we want the statute of limitations to commence running. Other reasons are that you’ve got certain elections that must be made in a timely manner, and those elections are included on the 706. You want to minimize any penalties, such as a failure to file penalty, in the event that you had later-discovered assets that would cause the estate to go passed [sic] the threshold.
From the accountant’s standpoint, you want to establish items of income and expense in respect to the decedent. So there’s many reasons for filing an estate tax return, even when it has not met the threshold amount.
Mr. Holley said the form 706 return was filed in this case primarily at his urging, for the reasons he had stated, and out of concern for potential personal liability of the personal representatives. During cross-examination, Mr. Holley explained that if the estate had not filed a form 706 return “and subsequently discovered assets that caused it to pass the threshold, then there would have been a penalty for failure to have filed a return.” When asked if filing an amended return would avoid the penalties for failure to file, Mr. Holley responded:
You would have had to file an original return in order to have amended it to avoid the penalties. If there had been any additional tax — I mean, if there had been any additional assets and tax, you could have avoided the failure to file penalty, but you would not have avoided interest and penalties on the tax due.
Over objection, former counsel of record for First Guaranty Bank, was permitted to testify as an expert for the bank. Former counsel stated that a reasonable hourly rate for the attorney for the trustee and for the personal representatives would be $150 to $200 per hour. He opined that many of the assets listed on the first inventory as estate assets actually should have been shown as trust assets. He said the second inventory also erroneously listed the house as an estate asset rather than as a trust asset. As a former attorney for the Internal Revenue Service, the bank’s former counsel asserted he would not have filed a Form 706 return in this case, because the gross estate was less than $600,000. He further opined that this case did not involve complex or difficult issues, and he criticized the several hours he assumed the personal representatives’ attorney had expended on a contested AT & T bill.
*751 Based on the new probate attorney’s fee statute, the bank’s former counsel testified that the personal representatives’ attorney would be entitled to a presumptively reasonable fee of $1500 for the probate estate. He acknowledged that the 1995 statute relating to fees for a trustee’s attorney is effective for settlors dying after July 1, 1995, so from a technical point of view it is not applicable to this case. When asked his opinion as to a reasonable fee for appellant’s representation of the trustee, the bank’s witness said:
Realizing that there is no statute or there was no statute, attorney fees for trustees, I would apply — and since trusts and probate estates are kind of together, you would administer them together.
Applying the total scheme, I would use the same parameters that are in the personal representatives — trustees for personal representative, and that is $3,000 on the first $100,000 and then 3 percent on the next — in this case, $327,896.00 at three percent. That would be $9,836.91. You add those two together and that’s $12,-836.97.
And then I would add to that the $1500 that she would have been entitled to as an attorney for the personal representative in the probate proceeding.
The bank’s former counsel testified that the $23,000 fee charged by the personal representatives’ attorney was somewhat excessive, and acknowledged that he had articulated this opinion while he was still counsel for the bank. Counsel also acknowledged he had neither seen, nor asked to see, the attorney’s time slips. During the time counsel represented First Guaranty Bank, he conducted no discovery with regard to the interim attorney’s fees billed in connection with the McQueen estate and trust. Counsel further acknowledged the trust had no acting trustee from the date of Ms. McQueen’s death until April 27, 1994, when First Guaranty Bank became trustee. It was undisputed that the attorney for the personal representatives assumed trustee attorney duties during the period when the trust was in limbo.
The bank’s trust officer acknowledged meeting with the personal representatives and their attorney, to discuss filing a Form 706 return in this ease. He explained there was a concern about a promissory note owed by one of the three beneficiaries for sale of land in Moultrie, Georgia, which could be an asset for purposes of the taxable estate. Therefore, it was deemed necessary to file a Form 706. The trust officer further acknowledged that the bank did not inquire of the attorney concerning the increase in her hourly rate as shown on the third bill, and agreed the bank paid the first three bills submitted by the attorney without restrictive endorsement.
In the order on appellee’s petition to review compensation of attorney for the personal representatives, the probate court found the 1995 version of section 733.6171 to be applicable to this case. Based on the 1995 statute, the probate court concluded that the attorney was entitled to a presumptively reasonable fee of $1500 for her services as attorney for the personal representatives. The probate court accepted the testimony of former counsel for the bank as to a reasonable attorney’s fee for the' personal representatives’ attorney, and adopted a portion of former counsel’s analysis. Upon application of this analysis, the court found the attorney was entitled to a total fee of $14,565, for services performed for the personal representatives and for the trust. The attorney was ordered to return to the bank any amount she had been paid in excess of the total fee determined by the probate court. The court further found the attorney’s claimed fee of $23,819.19 was “substantially unreasonable,” and reserved jurisdiction on the issue of the reasonableness of attorney’s fees incurred in litigating the attorney’s fees. Although the costs claimed were uncontro-verted, an award of costs was not included in the order on compensation of the attorney.
The first issue raised in this appeal concerns the probate court’s failure to award costs. “In all probate proceedings costs may be awarded as in chancery actions.” § 733.106(1), Fla.Stat. (1993). Expert witness fees for a lawyer who testifies as an expert may be taxed as costs. See Stokus v. Phillips, 651 So.2d 1244, 1246 (Fla. 2d DCA 1995). See also Travieso v. Travieso, 474 *752 So.2d 1184 (Fla.1985). In Stokus, the court interpreted Travieso “to mean that an award of such fees is not discretionary if the testifying attorney expects to be compensated for his testimony.” 651 So.2d at 1246.
The record in this case reflects that appellant’s expert witness expected to be compensated for his testimony, and subsequently filed a claim for attorney’s fees. Guaranty Bank offered nothing to refute the proof of costs incurred by the attorney for the personal representatives. Despite an express finding in the order that under the terms of the trust, “the Trust is obligated to pay administrative costs of Ms. McQueen's estate as the personal representatives may request,” the decretal portion of the order is silent with regard to costs. Since any assessment of costs must be stated in express terms and in a specific amount, see MacNeill v. Marks, 61 So.2d 648 (Fla.1952); Baker v. Varela, 416 So.2d 1190, 1193 (Fla. 1st DCA 1982), the bank’s assertion that the order at issue “impliedly” included an award of costs within the total attorney’s fee award does not withstand scrutiny. Due to the probate eoui’t’s failure to rule upon this matter, we must reverse and remand with directions to rule upon the claim for costs.
The second and third issues concern the attorney’s fee agreement for an hourly rate, based upon the attorney time expended in representation of the personal representatives and the trust. Both the 1993 and 1995 versions of section 733.6171, Florida Statutes, provide in part:
(1) Attorneys for personal representatives shall be entitled to reasonable compensation for their services payable from the assets of the estate without court order.
(2) The attorney, the personal representative, and persons bearing the impact of the compensation may agree to compensation determined in a different manner than provided in this section.
Where the existence of an oral fee agreement is supported in the record by unrebutted competent substantial evidence, a court’s determination that an agreement does not exist is subject to reversal and remand with directions to enter a judgment for attorney’s fees based on the oral fee agreement. See Isaak v. Chardan Corp., 532 So.2d 1364, 1366 (Fla. 2d DCA 1988).
The probate court in this case correctly found there was no written agreement between the personal representatives, their attorney, and First Guaranty Bank at the time the four attorneys’ fee statements were submitted. The personal representatives and their attorney executed a written agreement on August 16,1995, after the bank filed its petition to review compensation of the attorney for the personal representatives. Nevertheless, the record contains competent substantial evidence demonstrating the existence of an oral fee agreement between the attorney and the bank, and between the attorney and the personal representatives. The record reflects the personal representatives agreed the attorney should be paid $200 per hour for her services; the record also reflects that the bank agreed the attorney should be paid at an hourly rate, “and not as a percentage of the value of the assets under administration.” In other words, the bank expressly conceded the existence of the attorney fee agreement for an hourly rate, rather than the statutory formula. Further, according to the bank’s former counsel, the attorney’s hourly rate fell within the reasonable range of $150 to $200 per hour for a person with more than ten years of experience in probate and trust law.
In light of the foregoing, we conclude the probate court erred in applying a statutory formula to the calculation of a reasonable attorney’s fee, contrary to the parties’ agreement that the attorney would be compensated at an hourly rate.
The fifth issue concerns the propriety of retroactive application of the 1995 statutory changes to section 733.6171, to determine the amount of attorney’s fees payable to the attorney for the services she performed in connection with this probate proceeding. It is well settled that—
[t]he right to attorney fees is a substantive one, as is the burden on the party responsible for paying the fee. A statutory amendment affecting the substantive right *753 and concomitant burden is likewise substantive.
L. Ross, Inc. v. R.W. Roberts Construction Company, Inc., 481 So.2d 484, 485 (Fla.1986). See also Williams College v. Bourne, 656 So.2d 622, 628 (Fla. 5th DCA 1995)(holding that “once the services by the attorney for the estate were rendered, the estate became obligated to pay a reasonable attorney fee ... based on the then applicable law”).
On its face, section 733.6171(8), Florida Statutes (1995), evinces legislative intent that the statutory changes shall apply in cases such as the matter before us. The provision states:
(8) This section shall apply to estates in which an order of discharge has not been entered prior to its effective date but not to those estates in which attorney’s fees have previously been determined by order of court after notice.
A notice of discharge was not entered in this ease prior to the effective date of the 1995 statute, and the attorney’s interim billing statements were not determined by the court. In such circumstances, the legislature clearly intended that the 1995 statutory changes to section 733.6171 would apply to determine the amount of a reasonable attorney’s fee for the personal representatives’ attorney.
Even if it were permissible to disregard the prohibition against retroactive application of statutes affecting substantive rights, competent substantial evidence in the record establishes the existence of a fee agreement based on an hourly rate. Since the right to an attorney’s fee is substantive, a statutory amendment which affects that right and the concomitant obligation to pay the fee, also is substantive. Ross, 481 So.2d at 485. In Ross, the supreme court refused to treat an amendment which altered the method of computing an attorney’s fee as remedial and thereby excepted from the general prohibition against retrospective application of statutes. 481 So.2d at 485.
Pursuant to the rule pronounced in Ross and followed in Williams College v. Bourne, we must reverse the probate court’s ruling that the 1995 version of section 733.6171 is applicable to the determination of the amount of the fee for the personal representatives’ attorney.
The sixth issue concerns the probate court’s application of the 1995 version of section 733.6171 to determine the amount of the attorney’s fee for the trustee’s attorney. Prior to enactment of section 737.2041, Florida Statutes (1995), there was no provision governing trustee’s attorney’s fees. The new provision applies only to settlors “who die on or after July 1, 1995.” § 737.2041(11), Fla. Stat. (1995). Therefore, it has no application to this case, as the probate court recognized.
In determining an attorney’s fee for the trust, the probate court adopted the analysis of the bank’s former counsel. Counsel analogized the 1995 version of section 733.6171(3), the provision for calculation of attorney’s fee for the personal representatives, to the calculation of an attorney’s fee for the trustee’s attorney. In its findings as to the amount of a reasonable fee, the probate court found the attorney performed no extraordinary services, and took particular exception to the unexplained increase in the attorney’s hourly rate which appeared, without prior notice, bn the third and fourth statements.
In view of the competent substantial evidence establishing a fee agreement at an hourly rate, and the prohibition against retrospective application of statutory changes which affect substantive rights, we must reverse the probate court’s application of the 1995 amended version of section 733.6171 to calculate a trustee’s attorney’s fee in this case.
The probate court’s determination that the attorney’s claim for fees in the amount of $23,819.19 was substantially unreasonable constitutes another instance of a misapplication of the 1995 amendments to the facts of this case. The term “substantially unreasonable” appears in the 1995 version of section 733.6171. Under the 1993 versions of the statute, the cost of litigating an attorney’s fee was recoverable from the estate.[3] However, *754 under the 1995 version, the estate could avoid payment of an attorney’s fee for the trustee’s attorney if a court found the fee request to be “substantially unreasonable.”[4]
We conclude the 1995 amendments to section 733.6171 may not be applied in this ease, where the decedent died in 1993, and the attorney’s services were performed prior to the effective date of the 1995 amendments. See Ross; Bourne.
Since we must reverse the order determining attorney’s fees, we find it unnecessary to address appellants’ challenge to the constitutionality of section 733.6171, Florida Statutes (1995), as applied by the probate court to the facts of this case. Further, we conclude the trial court’s admission of the testimony of the bank’s former counsel did not constitute reversible error. An expert may give an opinion involving ultimate issues, provided a proper predicate is laid for introduction of the testimony. § 90.703, Fla. Stat. (1993).
Accordingly, we reverse as to the probate court’s implicit finding that the parties did not enter into a valid attorney’s fee agreement, and the probate court’s retrospective application of the 1995 statutory changes to calculate attorney’s fees for the attorney for the personal representatives and the trustee. This cause is remanded for calculation of attorney’s fees pursuant to the parties’ agreement for an hourly rate, and for a ruling upon the claim for costs.
WOLF and VAN NORTWICK, JJ., concur.

. Mr. Holley, one of the personal representatives, had been Ms. McQueen’s personal accountant (CPA) for many years.

. A Form 706 must be filed if the value of the gross estate exceeds $600,000. 26 U.S.C. § 6018(a)(1); 26 C.F.R. § 20.6011-1(a).

. Section 733.6171(7), Florida Statutes (1993), provides:
(7) Court proceedings to determine compensation, if required, are a part of the estate *754 administration process, and, the costs, including fees for the personal representative’s attorney, shall be determined by the court and paid from the assets of the estate. The court shall direct from which part of the estate they shall be paid.

. Section 733.6171(9), Florida Statutes (1995), provides:
(9) Court proceedings to determine compensation, if required, are a part of the trust administration process, and the costs, including fees for the trustee’s attorney, shall be determined by the court and paid from the assets of the trust unless the court finds the attorney's fees request to be substantially unreasonable. The court shall direct from which part of the trust they shall be paid, (emphasis supplied)