TAYLOR, J.
Appellant, Progressive Express Insurance Company (“Progressive”), appeals a final declaratory judgment, which determined that insurance coverage existed under an automobile policy for an accident that occurred on July 26, 2008. The trial court entered summary judgment in favor of the insureds and ruled that Progressive’s unconditional acceptance of premiums waived its right to claim that there had been a lapse in coverage. Under the circumstances of this case, we disagree and hold that where a policy expires without the insured making a renewal payment, and a loss occurs after the expiration of the policy period, the insurer may subsequently accept premium payments and reinstate the policy prospectively without waiving the right to deny coverage for the loss. We therefore reverse the summary judgment in favor of the insureds. However, we do not remand for judgment in favor of the insurer, as we find that the insureds may have a viable estoppel claim *397 based on a potentially misleading bill that Progressive sent to the named insured.
By way of background, Progressive issued an automobile policy to Michel Camil-lo, the named insured, for the policy period from January 9, 2008 through July 9, 2008. Michel Camillo’s brother, Jean-Paul, was also an insured on the policy.
On May 21, 2008, Progressive sent a Cancel Notice to Camillo,[1] stating that payment must be received by June 5, 2008, in the amount of $537.68 or else the policy would be canceled. Camillo acknowledged that he received the Cancel Notice.
On June 4, 2008, Progressive sent a Renewal Bill to Camillo, which stated that the unpaid amount must be paid by June 5, 2008, to avoid cancellation of the current policy. In addition, the Renewal Bill stated that to renew the policy, Camillo was required to pay at least the minimum amount of $1,062.17 by July 9, 2008. The Renewal Bill stated that payment of the unpaid amount for the current policy would not renew the policy.
The Payment Coupon attached to the Renewal Bill stated that to avoid cancellation of the existing policy, a payment of $532.68[2] was due by June 5, 2008. The Payment Coupon further stated: “When all payments on your current policy are made, please pay $1,062.17 by July 9, 2008.” In Camillo’s deposition, Camillo testified that he did not recall receiving the Renewal Bill dated June 4, 2008, even though he acknowledged that the address listed on this correspondence was his correct address.
On June 6, 2008, Progressive sent Cam-illo a notice that the policy was cancelled because Progressive did not receive payment of the minimum amount due by June 5, 2008. On June 7, 2008, Camillo made a payment of $537.68. Progressive’s underwriting specialist stated in an affidavit that at the time of Camillo’s June 7th payment to reinstate the existing policy ending July 9, 2008, Camillo still owed $527.64 on the existing policy.
On June 8, 2008, Progressive sent a Reinstatement Confirmation to Camillo. This correspondence stated that Progressive had reinstated Camillo’s policy effective June 5, 2008, and that there was no lapse in coverage.
On June 8, 2008, Progressive sent Cam-illo an “Auto Insurance Bill” stating that $527.64 was the minimum amount due by June 24, 2008. However, this bill stated the following in the upper right-hand corner: “Policy Period: Jul 9, 2008 — Jan 9, 2009.” This bill did not state that the $527.64 was owed for the existing policy period that ended as of July 9, 2008. Camillo testified that he received this bill.
On June 23, 2008, Progressive sent Camillo a Renewal Reminder. The Payment Coupon attached to the Renewal Reminder set forth a “Pay now” amount of $1,060.17, which included $527.64 owed from the current policy. The Payment Coupon also unambiguously stated, “To avoid a lapse in coverage, payment must be received or postmarked by 12:01 a.m. on July 9, 2008.” (Emphasis in original). Camillo testified that he did not recall receiving the June 23, 2008 Renewal Reminder, even though he admitted that this *398 correspondence set forth his correct address.
On June 24, 2008, Progressive sent an email reminder to the email address on file for Camillo, again stating that to avoid a lapse in coverage, a minimum payment of $1,060.17 was due by July 9, 2008. According to Progressive, this email was not returned as undeliverable. Camillo verified that Progressive had his correct email address, but he nevertheless claimed that he did not receive this email. On June 25, 2008, Progressive sent another Renewal Reminder to Camillo’s email address, but Camillo denied receiving it.
On July 3, 2008, Camillo made a payment of $527.64 to Progressive. Progressive credited this payment on only the existing policy, which was then paid in full. However, Camillo made no additional payments prior to July 9, 2008, and Camillo did not pay anything towards the renewal. Camillo testified in his deposition that he was not aware that he was required to pay anything else at that time. But after being presented with all the documents described above, Camillo agreed that the renewal was not paid before July 9, 2008.
On July 26, 2008, Jean-Paul was involved in an automobile accident. Michel Camillo reported the accident to Progressive, but Progressive took the position that the policy had expired on July 9, 2008, without being renewed and that no policy was in force at the time of the accident. After reporting the accident, Camillo made a payment that same day and his Progressive policy was reinstated. Thereafter, Camillo made monthly payments to Progressive, which Progressive accepted and did not return.
In December 2008, the insureds filed a complaint against Progressive, seeking a declaration that their automobile insurance policy with Progressive provided coverage for the motor vehicle accident that occurred on July 26, 2008. Progressive answered the complaint and filed a counterclaim for declaratory relief, requesting a declaration that there was no coverage because the policy had lapsed before the accident of July 26, 2008.
In response to a request for admissions, Camillo admitted that Progressive sent him a Verification of Insurance Form, which indicated that coverage lapsed on July 9, 2008, and resumed on July 27, 2008.
After discovery revealed the facts set forth above, the parties filed cross-motions for summary judgment. In the insureds’ motion for summary judgment, they argued primarily that Progressive waived its right to contend that there was a lapse in coverage by accepting the insurance premiums without making any effort to return the funds. By contrast, in Progressive’s motion for summary judgment, Progressive maintained that it was entitled to determination as a matter of law that there was no coverage available under the policy for the July 26, 2008, accident because Camillo failed to pay any premium towards the renewal of the policy on or before the renewal date of July 9, 2008. Progressive’s motion for summary judgment was supported by multiple exhibits, including the correspondence described above and the affidavit of a “Litigation Underwriting Specialist” for Progressive.
According to the affidavit of Progressive’s underwriting specialist, because Camillo had reported that the accident involving Jean-Paul had already occurred, Progressive reinstated Camillo’s policy with coverage commencing the next day, July 27, 2008.
At the summary judgment hearing, counsel for the plaintiffs argued that Progressive “never took the position that the policy was reinstated as of July 27 ... until after this lawsuit was filed. You *399 won’t find one single piece of paper which says — [that] in this record.”[3] After listening to the argument of the parties, the trial court ruled that coverage existed because Progressive unconditionally continued to accept payments from the insured. The court further reasoned:
We have documents that say the period is from July 9th forward. It doesn’t say July 27th. I didn’t see anything here that said July 27th, other than what I deem to be a self-serving affidavit filed post-litigation.... I have to assume he thought he was paying for coverage July 9th forward, because that’s what you told him.
(Emphasis added). The trial court thus granted the plaintiffs’ motion for summary judgment and denied Progressive’s motion for summary judgment. The trial court denied rehearing and entered a final declaratory judgment determining that insurance coverage existed under the Progressive policy for the accident that occurred on July 26, 2008. This appeal followed.
The standard of review of an order granting summary judgment is de novo. Fla. Atl. Univ. Bd. of Trs. v. Lindsey, 50 So.3d 1205, 1206 (Fla. 4th DCA 2010). When reviewing an order granting summary judgment, an appellate court must examine the record in the light most favorable to the non-moving party. Allenby & Assocs., Inc. v. Crown St. Vincent Ltd., 8 So.3d 1211, 1213 (Fla. 4th DCA 2009). “[T]he burden is upon the party moving for summary judgment to show conclusively the complete absence of any genuine issue of material fact.” Albelo v. S. Bell, 682 So.2d 1126, 1129 (Fla. 4th DCA 1996). A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law. Moore v. Morris, 475 So.2d 666, 668 (Fla.1985).
The threshold issue we address is whether the trial court erred in rejecting the affidavit of Progressive’s underwriting specialist in deciding the issue of coverage.
A trial court may not weigh the evidence or judge the credibility of witnesses in arriving at summary judgment. Craven v. TRG-Boynton Beach, Ltd., 925 So.2d 476, 480 (Fla. 4th DCA 2006) (citing Petruska v. Smartparks-Silver Springs, Inc., 914 So.2d 502 (Fla. 5th DCA 2005)). An affiant’s personal knowledge may be based on his or her review of the underwriting file. See Jackson Nat’l Life Ins. Co. v. Proper, 760 F.Supp. 901, 907 (M.D.Fla.1991) (underwriting vice president, who reviewed the underwriting file and other information, was “able to gain personal knowledge of the events prior to the execution of the affidavit”); see also Lockheed Martin Corp. v. United States, 70 Fed.Cl. 745, 754 (2006) (the personal knowledge requirement “does not require that the affiant be personally involved in all matters at issue, but can include information obtained from a review of business records”). However, conclusory self-serving statements which are framed in terms only of conclusions of law are not sufficient to either raise a genuine issue of material fact or prove the non-existence of a genuine issue of material fact. See Heitmeyer v. Sasser, 664 So.2d 358, 360 (Fla. 4th DCA 1995) (collecting cases).
Here, the trial court rejected the affidavit as “self-serving,” but this was error. Stated succinctly, the underwriting *400 specialist’s affidavit asserted that 1) Progressive mailed all the renewal bills and reminders described above, 2) Camillo failed to timely pay his renewal premium by July 9, 2008, and 3) when Camillo made a premium payment following the accident, Progressive reinstated Camillo’s policy commencing the next day, July 27, 2008. The affidavit was not framed solely in terms of conclusions of law. In fact, the affidavit did not opine at all on the legal consequences of the above facts, such as whether a waiver or estoppel occurred. Thus, the trial court should have considered the underwriting specialist’s affidavit in ruling on the motions for summary judgment.
On the issue of coverage, this case presents the following question: Where a policy expires without the insured making a renewal payment, and a loss occurs after the expiration of the policy period, may the insurer accept premium payments and reinstate the policy prospectively without waiving the right to deny coverage for the loss? We answer this question in the affirmative. No waiver should occur in such circumstances because the insurer is not retaining any premiums for the lapsed period between the expiration of the policy and the prospective reinstatement of the policy.
A waiver is the intentional relinquishment of a known right. See, e.g., WSG W. Palm Beach Dev., LLC v. Blank, 990 So.2d 708, 715 (Fla. 4th DCA 2008). The elements of waiver are: (1) the existence of a right which may be waived; (2) actual or constructive knowledge of the right; and (3) the intent to relinquish the right. Bueno v. Workman, 20 So.3d 993, 998 (Fla. 4th DCA 2009). “In the insurance context, Florida courts look to whether an insurer’s acceptance of a late payment was unconditional, which would constitute waiver, or whether the acceptance was conditioned on the performance of something else by the insured or the insurer, which would not constitute waiver.” Bristol W. Ins. Co. v. Albertson, 41 So.3d 378, 381 (Fla. 4th DCA 2010) (internal citation and quotation marks omitted).
Under Florida law, retention of a delinquent premium payment is a waiver of the right to cancel a policy or to refuse reinstatement. See Meeks v. State Farm Mut. Auto. Ins. Co., 460 F.2d 776, 778 n. 3 (5th Cir.1972) (applying Florida law). For example, in Mixson v. Allstate Insurance Co., 388 So.2d 608 (Fla. 3d DCA 1980), which involved an auto policy that had been canceled due to the insured’s failure to timely pay policy premiums on an existing policy, the Third District held: “An insurer cannot retain a past-due premium and at the same time claim that a forfeiture of the policy has occurred. In this case, the unconditional acceptance of the April payment constituted a waiver of the insurer’s right to contend the policy has lapsed.” Id. at 609.
By contrast, in Travelers Indemnity Co. v. Mirlenbrink, 345 So.2d 417 (Fla. 2d DCA 1977), an insured failed to pay a renewal premium until four months after receiving the initial renewal statement and nine days after being involved in an accident. The Second District explained that “[t]he policy was issued on a continuing basis, and payment of renewal premiums was, in absence of some waiver by, or estoppel against, the insurer, a prerequisite to the insured’s continued coverage.” Id. at 418. The court held that even though the insurer cashed the insured’s check for the renewal premium, the insurer was not estopped from denying coverage for the accident. The court noted that although the late premium check was cashed by the insurer, the insurer subsequently issued its own check to the insured to return the premium, which “negated *401 any intent to effectuate a renewal of the lapsed policy.” Id. at 419.
The fact pattern of this case is similar to that in Mirlenbrink, with the notable exception that here the insurer did not return the premium and purported to reinstate the policy effective the day after the loss. The insureds suggest that the outcome of Mirlenbrink would have been different if the insurer in that case had not returned the premium to the insured. However, Mirlenbrink did not address the question of whether the insurer in that case could have issued a renewal of the policy prospectively after the loss.
The precise issue in this case appears to be one of first impression in Florida. Although no Florida cases specifically address this exact situation, we find there to be a valid distinction between an insurer that retains a late premium following a policy cancellation for non-payment of premiums, and an insurer that accepts a renewal payment after the expiration of a policy period and reinstates the policy prospectively.
Out-of-state authorities have held that an insurer does not waive a lapse of coverage where it accepts a renewal premium after the expiration of a policy and reinstates the policy effective after the loss. See Munford Union Bank v. Am. Ambassador Cas. Co., 15 S.W.3d 448 (Tenn.Ct.App.1999) (holding that trial court erred in holding that insurer waived the lapse of coverage when insurer accepted a renewal premium and reinstated the policy effective one day after the loss); Monteleone v. Allstate Ins. Co., 51 Cal.App.4th 509, 59 Cal.Rptr.2d 48 (1996) (offer to reinstate automobile liability policy that insurer made after insureds failed to pay renewal premium did not bar insurer from claiming that coverage lapsed between due date specified in renewal offer and date when insureds finally paid premium; the reinstatement offer clearly stated that coverage had terminated and that reinstatement, if effected, would be “with a short lapse in coverage,” and the insurer returned the premium for the lapsed period). We agree with these authorities and hold that where a policy expires without the insured making a renewal payment, and a loss occurs after the expiration of the policy period, the insurer may subsequently accept premium payments and reinstate the policy prospectively without waiving the right to deny coverage for the loss.
Even though we conclude that the insurer did not waive the right to deny coverage by accepting a renewal premium after the expiration of the policy, we do not direct that judgment be entered in favor of the insurer. “[E]ven when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party” if it determines that there are genuine issues of material fact in dispute. Morales v. Quintel Entm’t. Inc., 249 F.3d 115, 121 (2d Cir.2001). Here, the insureds raised estoppel as an affirmative defense to Progressive’s counterclaim for declaratory relief. Where affirmative defenses are raised, the movant has the burden of either disproving them or establishing their legal insufficiency. See O’Brien v. Fed. Trust Bank, F.S.B., 727 So.2d 296, 298 (Fla. 5th DCA 1999). We find that there is a genuine issue of material fact as to whether a potentially misleading bill that Progressive sent to the named insured gave rise to an estoppel.
The elements of estoppel are: (1) a representation as to a material fact that is contrary to a later-asserted position; (2) reasonable reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel, *402 caused by the representation and reliance thereon. Lloyds Underwriters at London v. Keystone Equip. Fin. Corp., 25 So.3d 89, 93 (Fla. 4th DCA 2009); Mobile Med. Indus. v. Quinn, 985 So.2d 33, 35-36 (Fla. 1st DCA 2008). Although closely related, the doctrines of estoppel and waiver are distinguishable. See SourceTrack, LLC v. Ariba, Inc., 958 So.2d 523, 526-27 (Fla. 2d DCA 2007). Estoppel is designed to prevent injustice and requires a showing of detrimental reliance, while waiver is the intentional relinquishment of a known right and does not require detrimental reliance. Id.
Here, the June 8, 2008, bill that Progressive sent to the named insured stated that $527.64 was the minimum amount due, but the bill also stated that the policy period was July 9, 2008, to January 9, 2009. In our view, the June 8, 2008 correspondence was potentially misleading because it incorrectly listed the renewal policy period (i.e., July 9, 2008-January 9, 2009) when it should have listed the then-existing policy period (i.e., January 9, 2008-July 9, 2008). Camillo’s deposition testimony seemed to suggest that he relied upon that June 8th bill in believing that his July 3rd payment of $527.64 served to renew the policy.
To the extent that the June 8th bill was misleading, it was arguably clarified by all the other correspondence that Progressive apparently sent to Camillo. But in Camil-lo’s deposition, he either denied receiving the remaining correspondence or claimed that he did not recall receiving it.[4]
Proof of mailing of a document to the correct address creates a presumption that the item mailed was, in fact, reeeived. W.T. Holding, Inc. v. State Agency for Health Care Admin., 682 So.2d 1224, 1225 (Fla. 4th DCA 1996). The presumption, however, is rebuttable. Id. “[T]he denial of receipt does not automatically overcome the presumption but instead creates a question of fact which must be resolved by the trial court.” Scutieri v. Miller, 584 So.2d 15, 16 (Fla. 3d DCA 1991).
Because the resolution of the estoppel claim depends upon a factual determination as to which correspondence the named insured actually received from Progressive, we remand for further proceedings.

Reversed and remanded for further proceedings.

GERBER and LEVINE, JJ., concur.

. Throughout this opinion, any reference to "Camillo” will denote the named insured, Michel Camillo.

. It is unclear why the May 21 Cancel Notice stated that the payment due was $537.68, whereas the Renewal Notice stated that the payment due was $532.68. But this discrepancy is not relevant to our disposition of this case.

. We do not believe this was an accurate representation to the trial court. The plaintiffs admitted in their response to Progressive's request for admissions that they received a Verification of Insurance form in which Progressive asserted that there was a lapse in coverage and that the policy was reinstated on July 27, 2008.

. Some of the questions posed to Camillo were phrased in an ambiguous way. For example, the following exchange between Progressive's attorney and Camillo is illustrative: "Q. Do you recall receiving this document (indicating)? A. No.” Thus, to the extent that a distinction between a "denial” and a “failure to recall” may be relevant, we interpret Camillo’s answers as a denial of receipt.