LEVINE, J.,
dissenting.
I respectfully dissent from the majority’s granting of Goheagan’s motion for rehearing. I would find that, as a matter of law, the insurer AVIC did not act in bad faith, and I would affirm the trial court’s entry of summary judgment.
“[Wjhen an insurer is handling claims against its insured, it ‘has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business.’ ” Perera v. U.S. Fid. & Guar. Co., 35 So.3d 893, 898 (Fla.2010) (quoting Borges v. Infinity Ins. Co., 896 So.2d 665, 668 (Fla.2004)).
This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.
Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla.1980) (citation omitted). Further, “[b]ad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause.” Powell v. Prudential Prop. & Cas. Ins. Co., 584 So.2d 12, 14 (Fla. 3d DCA 1991). In this case, the evidence does not support the proposition that AVIC failed to settle the claim “if possible, where a reasonably prudent person ... would do so” nor does it demonstrate that the failure to settle was “willful and without reasonable cause.”
The facts are that after the collision on February 24, AVIC attempted to contact Swaby’s mother, Olive Goheagan, on February 28, March 1, March 7, March 21, March 27, and April 16. From the first contact, AVIC was told by the stepfather that Goheagan had retained an attorney. The stepfather gave Goheagan’s cell phone number to AVIC and told Grieser, the adjuster, to call Goheagan. AVIC consistently attempted to get the name of the attorney from Goheagan or Goheagan’s family. Goheagan refused to give AVIC the name of the attorney after AVIC’s repeated attempts to obtain it.
Specifically, Grieser attempted to call Goheagan several times before getting her on the phone. When Grieser reached Go-heagan on March 21, Goheagan told Grieser that they would talk later.[3] Grieser called again, and Goheagan initially told Grieser to speak to someone else. When Grieser asked Goheagan for the name of the attorney that the stepfather had informed her was hired regarding this accident, Goheagan said she would call Grieser back. Another time, Grieser called Go-heagan and again Goheagan said it was not a convenient time to talk and that Grieser would have to call some other time. Only after these repeated attempts by AVIC, through Grieser, to obtain the name of the attorney was a suit filed regarding this accident.
Section 624.155(b)l., Florida Statutes, requires an insurer to act in “good faith” and to act “fairly and honestly toward its insured and with due regard for her or his interests.” Although Goheagan alleged a common law cause of action for bad faith, the obligation expressed in this statute can *441 be looked to for guidance, because it “is identical to the common law duty of good faith imposed on insurers in third-party claims.” Genovese v. Provident Life & Accident Ins. Co., 74 So.3d 1064, 1069 (Fla.2011) (Pariente, J., specially concurring); Macola v. Gov’t Emps. Ins. Co., 953 So.2d 451, 456 (Fla.2006) (“the same obligations of good faith that existed for insurers dealing with their insureds in the third-party context were extended by statute to the first-party context”); Farinas v. Fla. Farm Bureau Gen. Ins. Co., 850 So.2d 555, 559 (Fla. 4th DCA 2003). The common law duty “imposed upon the insurer the obligation of exercising good faith in negotiating for and in effecting a settlement of the claim against an insured.” Clauss v. Fortune Ins. Co., 523 So.2d 1177, 1178 (Fla. 5th DCA 1988). Attempting to contact Goheagan to determine the name of Goheagan’s counsel six times would hardly appear to constitute the lack of diligence or care envisioned as an example of a bad faith claim. It is hard to see, from the facts in this case, how AVIC failed to act in good faith with due regard for the interests of its insured, Perkins.
Although the majority rejects the argument that AVIC “could not have at least made a written offer and/or tender” of the liability limits to Swaby through Goheag-an, the failure to do either does not mean that AVIC has failed to meet its obligations. The facts of this case have AVIC literally repeatedly calling Goheagan to obtain the name of the attorney, and AVIC repeatedly being put off.
The focal point of a bad faith case is that the insurer puts its own interests ahead of the interests of its insured. “The essence of an insurance bad faith claim is that the insurer acted in its own best interests, failed to properly and promptly defend the claim, and thereby exposed the insured to an excess judgment.” Boateng v. Geico Gen. Ins. Co., 2010 WL 4822601, at *2 (S.D.Fla. Nov.22, 2010) (citation omitted).[4] There is no evidence in this record which demonstrates that AVIC placed its interests above the interests of Perkins. Nor is there any evidence of the “insurer’s failure to properly or promptly defend the claim.” Macola, 953 So.2d at 458 (citation omitted).
At oral argument, counsel for Goheagan appeared to argue that AVIC should have sent a letter enclosing a check for the policy limits to Goheagan, despite the fact that AVIC knew of the existence of an attorney hired by Goheagan. According to Goheagan’s counsel, the insurer should have gone forward with this attempt, but not concluded the settlement. This court should reject this interpretation of what an insurer must do to meet its obligation to demonstrate that it is defending a claim in good faith.
To accept Goheagan’s theory of bad faith, AVIC would have had to tender a letter with a check that could not be cashed. Since Swaby’s stepfather informed AVIC that Goheagan had retained an attorney regarding this accident, Florida Administrative Code Rule 69B-220.201 applied to AVIC’s conduct. Pursuant to that rule, “[a]n adjuster shall not negotiate or effect settlement directly or indirectly with any third-party claimant represented by an attorney, if the adjuster has knowledge of such representation, except with the consent of the attorney.” Fla. Admin. Code R. 69B-220.201(3)(i).
The majority notes the absence of case law supporting AVIC’s argument that this rule prevented it from making an offer or tendering a check to Swaby through Go- *442 heagan. But the plain language of the rule would appear to prohibit even the tendering of a check, since that could be construed as “negotiating” or “effecting” a settlement. “Negotiate” is defined as “To communicate with another party for the purpose of reaching an understanding”; “To bring about by discussion or bargaining”; or “To transfer (an instrument) by delivery or indorsement, whereby the transferee takes the instrument for value, in good faith.... ” Black’s Law Dictionary (9th ed.2009). Although the majority finds that “ [i]t is unclear at what point an attorney had been retained,” the appropriate inquiry under the rule is that AVIC “ha[d] knowledge of such representation” following Grieser’s initial conversation with the stepfather. For this reason, I respectfully disagree with the majority’s suggestion that it must be left to the jury to determine whether “the representation by an attorney [was] an impediment to at least make an offer to settle.” Of course, “[a] summary judgment should not be granted unless ... nothing remains but questions of law.” Progressive Express Ins. Co. v. Camilla, 80 So.3d 394, 399 (Fla. 4th DCA 2012). As an example of a “question of law” in a bad faith case, “[i]f an insurer is given a reasonable period of time in which to settle ... and it is entirely clear that within that time the plaintiff is not going to release the driver, the insurer as a matter of law cannot have breached a duty of good faith to the driver.” Contreras v. U.S. Sec. Ins. Co., 927 So.2d 16, 22 (Fla. 4th DCA 2006) (Klein, J., concurring specially). In this case, given the undisputed fact that Grieser had been informed of Goheagan’s retention of an attorney after speaking with the stepfather, whether the representation of the attorney, whose identity was unknown to Grieser, was an “impediment” to the making of an offer is a “question of law” that could be judicially determined by the granting of a motion for summary judgment.
Regarding the affidavit and deposition of Mark Lemke, “statements which are framed in terms only of conclusions of law,” as well as factual conclusions, “are not sufficient to either raise a genuine issue of material fact or prove the nonexistence of a genuine issue of material fact.” Progressive, 80 So.3d at 399; see also Buzzi v. Quality Serv. Station, Inc., 921 So.2d 14, 15 (Fla. 3d DCA 2006). In his affidavit, Lemke expressed his opinions that AVIC “did not adjust the underlying claim in good faith and breached the duty of good faith it owed its insured,” and that “[t]he claim should have immediately been recognized as one requiring tender of the $10,000 policy limits.”[5] These factual and legal conclusions are insufficient to defeat summary judgment. Lemke’s opinion that “[t]here were no ethical prohibitions that would have prevented [Grieser] from tendering a check” is refuted by Florida Administrative Code Rule 69B-220.201.
Although normally the question of whether an insurer acted in good faith is to be decided by a jury, there are instances where the evidence demonstrates that the insurer fulfilled all its legal obligations. Gutierrez, 386 So.2d at 785 (“The evidence presented in the present case demonstrates that Boston Old Colony fulfilled all these obligations.”). Where the insurer fulfills its obligations and there is “no sufficient evidence from which any reasonable jury could have concluded that there was bad faith on the part of the insurer,” then summary judgment should be granted for the insurer. Id.
*443 For example, in Barnard, v. Geico General Insurance Co., 2011 WL 2039560, at *3-4 (N.D.Fla. May 25, 2011), aff'd, 448 F.App’x 940 (11th Cir.2011), summary judgment was granted for an insurer, in part because “[i]t [was] clear that [the insurer] made every attempt to settle the claim for the policy limits, despite [the injured party’s attorney’s] inexplicable evasive behavior.” On appeal, the Eleventh Circuit affirmed, finding that “[n]o reasonable juror could find that [the insurer] acted in bad faith when [the attorney] made it impossible to engage in settlement discussion.” 448 F.App’x at 944. Similarly, in the present case, AVIC aspired to “engage in settlement discussion,” a process which would begin with tendering the policy limits, but it was precluded from doing so before learning the name of the attorney, a task that Goheagan prevented.[6]
Other courts, including Florida courts, have also granted summary judgment in favor of an insurer where there was no evidence from which a jury could find that the insurer acted in bad faith.[7] See Aboy v. State Farm Mut. Auto. Ins. Co., 394 F.App’x 655, 656-57 (11th Cir.2010) (affirming summary judgment for insurer because the insurer had no duty to verify the injured party’s injuries when the injured party refused to cooperate, and “acted immediately” once it learned of injuries’ severity by speaking with injured party’s attorneys); McGuire, 2012 WL 712965, at *11 (“from the very beginning, [insurer] stood ready to tender” the policy limit “and attempted to tender it”); Boateng, 2010 WL 4822601, at *5 (“there is no evidence” that insurer “sought to avoid settling Plaintiffs claims for the policy limits”); RLI Ins. Co. v. Scottsdale Ins. Co., 691 So.2d 1095, 1096 (Fla. 4th DCA 1997) (finding that facts showed “beyond any doubt that the primary insurer at no time missed an opportunity to settle which would have put it in a bad faith posture”); Clauss, 523 So.2d at 1178 (finding no' bad faith as a matter of law where there was one month between initial demand for policy limits and notice of bad-faith failure to settle, and insurer “expressed its willingness to tender the policy limits, but desired verification”); Caldwell v. Allstate Ins. Co., 453 So.2d 1187, 1190 (Fla. 1st DCA 1984) (determining that insurer was not “guilty of the kind of conduct which has typified those cases in which the courts have found the existence of bad faith”).
The majority notes that it was error for the trial court to grant summary judgment “based on its assumption there could be no bad faith because Swaby was in a coma and therefore there was no one to whom to make an offer.” Nevertheless, the trial court correctly entered summary judgment, not because there was no one to make an offer to since Swaby was in a coma, but rather because there was no *444 issue of material fact as to whether AVIC acted in bad faith. See Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) (“the Appellate Court will make its own determination as to the correctness of the decision of the lower court, regardless of the reasons or theories assigned therefor”) (citation omitted).
In this case, the undisputed facts demonstrate no basis from which a reasonable jury could conclude that AVIC acted solely in its own interest. AVIC acted “promptly and properly” in continually contacting Go-heagan in order to discover the name of the attorney retained by her, so that it could then contact the attorney. The majority’s position, reversing the granting of summary judgment, on the unique facts of this case, undeniably leaves the conclusion that one would be hard pressed to find a set of facts in a bad faith case where the granting of summary judgment would be sustained on appellate review. I would deny the granting of the motion for rehearing and would affirm the trial court’s grant of summary judgment on behalf of AVIC, based on the undisputed evidence that AVIC acted in good faith in attempting to settle this case.

. After this phone call, Grieser indicated in her notes that she "did not discuss anything else ... as [Goheagan] is [represented].”

. Even an insurer’s negligent conduct, alone, is insufficient to support a claim of bad faith. DeLaune v. Liberty Mut. Ins. Co., 314 So.2d 601, 603 (Fla. 4th DCA 1975).

. The evidence showed that AVIC did recognize that the accident involved clear liability. The fact that liability was clear was the reason AVIC called Goheagan six times to try to obtain the name of the attorney.

. The concern over potentially disingenuous bad faith claims "was debated in the majority and dissenting opinions in Berges, and it is far from over.” United Auto. Ins. Co. v. Estate of Levine ex rel. Howard, 87 So.3d 782, 788 (Fla. 3d DCA 2011) (footnote omitted). One concern highlighted is "being unresponsive to the insurance companies' attempts at communication.” McGuire v. Nationwide Assurance Co., 2012 WL 712965, at *12 (M.D.Fla. Mar.5, 2012).

. In moving for rehearing, Goheagan argues that the original opinion applied the summary judgment standard applicable in federal courts in order to find no bad faith on the part of AVIC. The summary judgment standard in Florida continues to be that the mov-ant “must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought.” Willis v. Gami Golden Glades, LLC, 967 So.2d 846, 848 (Fla.2007) (quoting Moore v. Morris, 475 So.2d 666, 668 (Fla.1985)).