DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CAROL BOYD,**
Appellant,

v.

**UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY,**
Appellee.

No. 4D2024-0246

[March 26, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael Robinson, Judge; L.T. Case No. 2021CA018523XXXX.

Michael A. Cassel of Cassel & Cassel, P.A., Hollywood, for appellant.

David A. Noel and Kara Rockenbach Link of Link & Rockenbach, PA, West Palm Beach, for appellee.

LEVINE, J.

Appellant, the homeowner, appeals a final judgment in favor of the appellee, insurer, on the homeowner's claim for breach of insurance contract. The homeowner argues that the trial court erred: (1) by its evidentiary rulings, (2) by denying the homeowner's motions for directed verdict, (3) by failing to instruct the jury on the definition of prejudice, and (4) by denying the homeowner's motion for new trial. We find no error and, as such, we affirm. We write only to address the first issue, and affirm the other issues without further comment.

The homeowner sued the insurer for breach of insurance contract. The homeowner alleged that she had discovered and reported damage to her property, and the insurer had "rejected the total amount of damages and completely denied coverage." The insurer responded, alleging, in part, that the homeowner had failed to provide a signed, sworn proof of loss, and other requested documents.

The case proceeded to a jury trial. The insurer stated that it was not contesting that the homeowner had water damage, and that it had made

two payments to the homeowner during the claims process, but "at some point in the process the relationship became complicated because [the insurer] was not getting the documents that we were requesting."

The insurer began its case with the testimony of the corporate representative assigned to this case. The corporate representative managed "all of the corporate representatives of [the insurer]." The corporate representative testified that he was familiar with how the insurer maintains its records, and how the insurer collects and stores field adjuster estimates. The corporate representative also testified that he reviewed both the homeowner's claim and policy.

When asked what was reported as "going on at the property," the homeowner's counsel objected on hearsay grounds, which was overruled. The corporate representative said that the homeowner "reported that a toilet overflow[ed] in the property and mentioned a couple of other issues such as water damage to the interior of the property." The insurer sent a claim acknowledgement letter to the homeowner, which tells the insured party to "keep[] an accurate record of repairs expenses" and "indicate[s] some of the duties after the loss, one will be keeping accurate records of repair expense."

The corporate representative testified that the insurer issued a payment to the homeowner for $14,905.94 for damages to the property pursuant to the estimate of the insurer's field adjuster. The insurer also paid the homeowner $11,400 for additional living expenses, which represented at least three months of rent.

The homeowner had provided the insurer with an estimate totaling $108,900.30. However, the estimate was very generic and gave only "full amount[s]." The corporate representative said the estimate "appear[ed] to be a renovation." The estimate did not "giv[e] an explanation as to how much each item or the reason why it's being replaced or repaired or if there is anything wrong with it," and instead just essentially said "replace [the] entire kitchen." When asked why the insurer did not just "cut a check" for the $108,900.30, the corporate representative said that the insurer "need[ed] to find out more information" because it was "certainly a lot different by $90,000 more than what we first saw as damaged."

The corporate representative testified that the homeowner provided a proof of loss, but it was returned to the homeowner's attorney as invalid, in part because the requested amount did not match the estimate provided to the insurer from the homeowner. The insurer then received additional estimates from the homeowner; however, the corporate representative said

that the estimates appeared to "have duplicate types of repairs." Though the estimates were not particularly detailed, the estimates "mention[ed] the same general areas." The corporate representative also said that he learned, based on the homeowner's testimony, that certain items which were repaired "should not be included" because they were to repair "issues with the property that have absolutely nothing to do with the loss." Ultimately, the insurer never received an estimate consistent with the amount requested in the homeowner's proof of loss.

During cross-examination of the corporate representative, the homeowner's counsel asked the corporate representative whether the insurer was provided with "any photographs which were notated." The corporate representative stated that he was provided notated photographs. The corporate representative was then asked if "that writing put [the insurer] on notice that there was an issue with unclean, perhaps sewage water." The insurer objected based on hearsay, and the objection was sustained. On rebuttal, the homeowner's counsel asked to refresh the corporate representative's recollection with the notated photograph, which the trial court did not allow.

The insurer also called a professional engineer, who testified that on an inspection of the homeowner's residence, he "noticed everything basically had been remodeled." For example, the layout had been "reconfigured" in the kitchen and bathroom, and an additional bathroom had been added to the house. The engineer was also asked on cross-examination whether any photographs he reviewed had notations, and the engineer answered, "I think one of them does, yes." The homeowner's counsel then asked if "anything in the mitigation company photos suggest[ed] that we were dealing with Category 3 water." The insurer objected to this question, like the one posed previously to the corporate representative, on hearsay grounds. The trial court sustained the objection.

Ultimately, the jury found for the insurer. The jury determined that, although the homeowner proved her property had suffered a loss during the policy period, the insurer also proved that the homeowner failed to substantially comply with conditions in the policy, and as such, the insurer was prejudiced. This appeal follows.

The homeowner argues that the trial court erred in various evidentiary rulings. "The standard of review for evidentiary rulings is abuse of discretion, limited by the rules of evidence." *Devalon v. Sutton*, 344 So. 3d 30, 31 (Fla. 4th DCA 2022) (citation omitted).

Corporate Representative's Testimony

The homeowner argues that the trial court erred by allowing the insurer's corporate representative to testify to matters outside of his personal knowledge. The insurer responds that the corporate representative obtained the requisite personal knowledge through his job duties and experience with the insurer, as well as his review of the insurer's documents and records.

The homeowner's argument fails because the corporate representative's testimony showed that he had obtained personal knowledge through both his job duties with the insurer and his review of the underwriting file in this case. "[A] witness may not testify to a matter unless evidence is introduced which is sufficient to support a finding that the witness has personal knowledge of the matter." § 90.604, Fla. Stat. (2023). "An affiant's personal knowledge may be based on his or her review of the underwriting file." *Progressive Exp. Ins. Co. v. Camillo*, 80 So. 3d 394, 399 (Fla. 4th DCA 2012). "[T]he personal knowledge requirement 'does not require that the affiant be personally involved in all matters at issue, but can include information obtained from a review of business records.'" *Id.* (quoting *Lockheed Martin Corp. v. United States*, 70 Fed. Cl. 745, 754 (2006)). However, a cursory review of business records is insufficient to establish personal knowledge. *See Rodriguez v. Avatar Prop. & Cas. Ins. Co.*, 290 So. 3d 560, 563 (Fla. 2d DCA 2020). The witness must provide a further basis for his knowledge, such as "any employment, training, or experience that might provide him with personal knowledge of the insurer's recordkeeping practices." *Savoy v. Am. Platinum Prop. & Cas. Ins.*, 363 So. 3d 1102, 1107 (Fla. 4th DCA 2023).

*Roberts v. Direct General Insurance Co.*, 337 So. 3d 889, 892 (Fla. 2d DCA 2022), is instructive. In *Roberts*, the court found that an insurance company's representative was testifying from her own personal knowledge where the representative was "the manager of Direct General's underwriting department, and her testimony reflected her familiarity with Direct General's underwriting guidelines, the program used to calculate insurance premiums, and the process for running additional premium quotes." *Id.* Additionally, the representative had reviewed the underwriting file in the case. *Id.*; *see also OneWest Bank, FSB v. Jasinski*, 173 So. 3d 1009, 1013 (Fla. 2d DCA 2015) (finding the affiant had personal knowledge and competency to testify where the affiant said that her statements were made "based on personal knowledge of the mortgage servicing business records practices of OneWest Bank," and that the affiant had access to the bank's business loans, including the records relating to the borrower's loan).

Similarly, in this case, the corporate representative testified that he managed "all of the corporate representatives" for the insurer. He was the designated corporate representative and records custodian for the instant case. The corporate representative testified that he was familiar with how the insurer maintains its records, and he was familiar with the insurer's practices in collecting and storing field adjuster estimates. The corporate representative also testified that he reviewed the homeowner's claim and policy. The corporate representative's testimony provided a sufficient basis for him to testify from his personal knowledge regarding the homeowner's claim and policy. The trial court clearly did not err by allowing the insurer's corporate representative to testify.

Notated Photograph

The homeowner argues that the trial court erred by preventing her from showing the insurer's corporate representative and expert witness a notated photograph to refresh the witnesses' recollections. The homeowner's argument fails because the witnesses gave no indication that they were unable to recall a fact at issue. For a party "to refresh a witness's recollection by showing the witness a writing," "the witness must indicate an inability to recall the fact or information at issue." *Claussen v. State, Dep't of Transp.*, 750 So. 2d 79, 82 (Fla. 2d DCA 1999). Both witnesses answered affirmatively when asked if they remembered the notated photograph. As such, the witnesses "had no memory to refresh." *Id.* We find the trial court did not abuse its discretion in preventing the homeowner from showing the witnesses the notated photograph.

In conclusion, we find that the trial court did not err in the evidentiary rulings raised by the homeowner, as the corporate representative had obtained personal knowledge sufficient to testify and neither witness indicated an inability to recall the notated photograph, which is required in order to permit the homeowner to refresh the witnesses' recollections. As such, we affirm.

*Affirmed.*

CONNER and ARTAU, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***

5